144 So.2d 911 (1962)
Thomas J. D'ALBORA
v.
Andrew GARCIA.
No. 309.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
Rehearing Denied October 15, 1962.
Certiorari Denied November 27, 1962.
*912 George H. Van Geffen and G. A. Fritchie, Jr., Slidel, for defendant-appellant.
Henican, James & Cleveland, C. Ellis Henican, New Orleans, for plaintiff-appellee.
Before AYRES, DAWKINS and ALLEN, JJ.
AYRES, Judge.
Plaintiff, by this action, sought an injunction against the defendant restraining him and those for whose acts he is responsible from obstructing or in any manner impeding the free use of a canal through which plaintiff and others have access from their properties to Lake Pontchartrain. The canal is approximately 2,000 feet long, at least 60 feet in width, and four to five feet deep. From a photograph and other evidence in the record, it appears that the canal was a "borrow" pit, dug by the State of Louisiana in constructing a road northward from what is now U. S. Highway 90 to Lake Pontchartrain. Such a pit was apparently dug on both sides of the road, which is now locally known as the "Old Hospital Road."
The canal to the west of the road is the one presently concerned. The canal has been in existence for a period of time exceeding 30 years. During this time it has been freely used by those whose properties fronted thereon as a thoroughfare to Lake Pontchartrain, as well as by the public in general, in fishing and crabbing, and as a shelter from the sometimes turbulent waters of the lake, brought about by storms or high winds.
Defendant owns a tract of land on the shores of Lake Pontchartrain where the canal enters the lake. Adjacent to his property and through which the canal also runs is a tract owned by the State of Louisiana, used as a park. Beyond and adjoining the park is plaintiff's property. Farther beyond plaintiff's property are the properties of other owners and occupants whose only access to the lake, as that of plaintiff herein, is through the canal. Upon his property, defendant has constructed (and now occupies) not only a residence but a place of business.
Defendant's occupancy of the aforesaid began about 1922, which appears to have been by permission or sufferance of the owners of the property. His legal occupancy appears to have begun about 1932 pursuant to a lease from the owner of the property, one Mestier. About 1948, defendant purchased the land previously occupied by him and placed thereon the aforesaid improvements.
Defendant also constructed, across the canal, near its entrance, a bridge sufficient not only to accommodate pedestrians but automobiles as well. Openings between the piers, through which vessels may pass, are about eight or nine feet wide. By closing or obstructing these openings, Garcia may effectively impede navigation in and out of the canal.
Testimony was introduced as to numerous attempts of the defendant to restrict passage *913 on the canal. These incidents were ten in number. Plaintiff was ordered by the defendant not to come through the canal and was threatened with bodily harm in the event he did so. These threats were accompanied by cursing and abuse.
During the 1930's, plaintiff acquired the property on the canal now owned by him. From 1940 to 1959, the property was occupied as his residence. The improvements thereon consist of a main dwelling, a guest house, and servants' quarters.
The obstructions and impediments to plaintiff's use of the canal consisted, as aforesaid, of the construction and works of the defendant placed thereon, and by running boats and barges so as to block the entrance or passage into or from the canal. These acts were alleged to have been committed in violation of LSA-R.S. 14:97 and 38:214. The first of these provides:
"Simple obstruction of a highway of commerce is the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult.
"Whoever commits the crime of simple obstruction of a highway of commerce shall be fined not more than two hundred dollars, or imprisoned for not more than six months, or both." (Emphasis supplied.)
The second of these statutes provides that
"No person shall dump or discharge or permit to be dumped or discharged into any waters or drains of the state any trees or other objects, substances, or materials which might interfere with the drainage. * * *"
An artificial drain within the contemplation of the statute was defined as one which had been used for the purposes of drainage for at least ten years.
Garcia's intent to exercise control over traffic on the canal was evidenced by a series of leases which he exacted from lessees wherein he charged 25 cents per day or $5 per month for the use of the canal. It was recited in said leases that both harbor and canal were privately owned by Garcia.
To plaintiff's petition, defendant first filed and urged an exception of no cause of action predicated upon two legal propositions: (1) that a writ of injunction is not an available legal remedy for the establishment of property rights or title to property, and (2) that the petition failed to allege that the canal is a part of the public domain, or that, if privately owned, plaintiff had a servitude or a right of passage through defendant's property, or right to use the canal. Defendant's answer tenders a defense predicated upon a similar proposition which may be reduced to the question as to whether the canal is, in fact and in law, navigable. The exception was overruled and, after trial on the merits, a preliminary injunction was directed to be issued as prayed for. From that judgment, the defendant has devolutively appealed.
We may first observe that the exception of no cause of action was, in our opinion, clearly without merit and was properly overruled. The object of this action is not the establishment of title to property. Nor was it necessary that plaintiff allege in so many words that the ownership of the canal was in the public, or, in the alternative, that plaintiff had a servitude or a right of passage over same. The issue relates, as heretofore stated, to the question of the navigability of the canal.
In posing this as the question submitted for resolution, we may further observe that no serious issue is raised as to the question of defendant's obstruction of the canal or to his impeding of traffic through the canal to the lake.
That the canal is, in fact, navigable is established by the record. The defendant, *914 Garcia, testified that he had moved a houseboat 200 feet up this canal. William E. Tell, whose camp is third from Highway 90, testified that he used a boat on this canal for 19 years (the boat was a 14-foot Speed Hull with an Evinrude motor); moreover, that he sought crabs in the canal and had seen people fishing therein; the water was sufficiently deep for his motor. Roland Armand, who also owns a camp on the canal, testified that he had a similar boat to that of Tell with a 22-h. p. motor, as well as a 16-foot skiff and a 10-h. p. motor. Some of Garcia's boats, drawing between two and two-and-a-half feet of water, came as far as Armand's camp on the canal. Albert White has lived in the area since 1929. When Garcia located at the entrance of the canal, White moved a houseboat back to the park. He also used a lugger 23 feet long and nine feet wide, drawing three-and-a-half to four feet of water. Vincent Planellas, another owner of property on the canal, gave similar testimony. Homer Gus Fritchie, Jr., defendant's son-in-law, testified that he could navigate the canal without difficulty in his 18-foot Speed Hull boat. These witnesses corroborated plaintiff in his use of the canalthe depth and width were sufficient therefor, even during low tide. Vessels from the lake entered the canal for the purpose of fishing or crabbing, as well as, on occasion, to find shelter from the stormy waters of the lake.
The waters of the lake are affected by the tides, and, in the canal, the tides ebb and flow regularly, although to a lesser degree. The canal may, therefore, be properly classified as an arm of the sea, as is the lake to which it is attached.
A test of the navigability of water bottoms is that those which are navigable in fact must be regarded as navigable in law, and they are navigable in fact when they are so used or are susceptible to such use, or are shown to be capable of commercial use. United States v. Utah, 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844; Packer v. Bird, 137 U.S. 661, 667, 11 S.Ct. 210, 211, 34 L.Ed. 819; The Daniel Ball, 10 Wall. 557, 563, 19 L.Ed. 999, 1001; Olin Gas Transmission Corp. v. Harrison, La.App. 1st Cir., 1961, 132 So.2d 721, 726 (writs refused).
It was particularly noted in the Packer case that it is the susceptibility of use as highways of commerce which gives sanction to the public right of control to the exclusion of private ownership of either the waters or the soils under them. Thus, it has been emphasized that the capability of use by the public for purposes of transportation and commerce affords the true criterion of navigability rather than the extent and manner of use. Economy Light & Power Co. v. United States, 256 U.S. 113, 122, 123, 41 S.Ct. 409, 412, 65 L.Ed. 847; United States v. The Montello, Etc., 20 Wall. 430, 22 L.Ed. 391. Nor, as was pointed out in United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243, does the lack of commercial traffic preclude a conclusion of navigability where personal or private use by boats demonstrates the navigability of the stream for a type of commercial navigation.
Thus, the general rule is stated in 56 Am. Jur., p. 645, "Waters," § 179:
"Navigability, in the sense of actual usability for navigation or navigability in fact, as a legal concept embracing both public and private interests, is not susceptible of definition or determination by a precise formula which fits every type of stream or body of water under all circumstances and at all times. A general definition or test which has frequently been approved is that rivers or other bodies of water are navigable when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. * * *"
This general rule has been followed and applied in numerous cases by the United *915 States Supreme Court. In addition to the authorities hereinabove cited, reference is made to the following cases: United States v. Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L. Ed. 1267; United States v. Holt State Bank, 270 U.S. 49, 46 S.Ct. 197, 70 L.Ed. 465; Brewer-Elliott Oil & Gas Co. v. United States, 260 U.S. 77, 43 S.Ct. 60, 67 L.Ed. 140; Donnelly v. United States, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820. The jurisprudence of the State of Louisiana likewise supports the general rule. State v. Jefferson Island Salt Mining Co., 183 La. 304, 163 So. 145; State v. Sweet Lake Land & Oil Co., 164 La. 240, 113 So. 833; State ex rel. Board of Com'rs of Atchafalaya Basin Levee Dist. v. Capdeville, 146 La. 94, 83 So. 421 [cert. den. 252 U.S. 581, 40 S.Ct. 346, 64 L.Ed. 727].
It was particularly pointed out in the United States v. Appalachian Electric Power Co. case, supra, that the conditions of exploration and settlement of an area explained the infrequency or limited nature of such use of waters as highways of commerce, and that the lack of commercial traffic does not preclude the conclusion that a body of water is navigable where personal or private use demonstrates the capability of the stream for a type of commercial navigation; the question of the availability of the body for navigation is controlling rather than the extent of commerce conducted thereon. A similar observation was made by the Louisiana Supreme Court in State v. Jefferson Island Salt Mining Co., supra.
Nor, has it been held that in order for a water body to be navigable it must be such at all times, inasmuch as its navigability is not destroyed because of interruptions by occasional obstructions (Goodwill v. Police Jury of Bossier Parish, 38 La. Ann. 752); nor, does the fact that the bottoms or beds of navigable bodies of water are susceptible to private ownership affect the question of navigability. California Co. v. Price, 225 La. 706, 74 So.2d 1, 10; State v. Richardson, 140 La. 329, 72 So. 984; State v. Bayou Johnson Oyster Co., 130 La. 604, 58 So. 405, 410. However, such private ownership is not inconsistent with the navigability of the body or stream. Nor is such navigability affected by such ownership; such ownership and the full enjoyment thereof may be somewhat impaired by reason of the superior rights of the Government and the public to the unhampered use of the water above them for navigation, commerce, and fishing. For it was so stated in the California Co. v. Price Case, supra:
"It seems to us that, if the bottoms of navigable lakes and bays can be included in Article 482, they fall within the class delineated in the second paragraph thereof for, whereas they are by their nature susceptible or capable of private ownership, their full enjoyment may be said to be somewhat impaired by reason of the superior rights of the government and the public to the unhampered use of the water above them for navigation, commerce, fishing and the like. * * *"
The trial court concluded that this canal was not only navigable in fact but navigable in law. The evidence in this case, considered in connection with the aforesaid general rule established in the jurisprudence of this State and of the United States, amply supports the conclusion reached.
The final question, therefore, is whether the defendant, Garcia, may obstruct this navigable canal or impede the use thereof. The answer is obvious. The Louisiana Criminal Code, LSA-R.S. 14:97, makes it a criminal offense for one to perform any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport which will render movement thereon more difficult, and provides, upon one's conviction therefor, that he shall be fined or imprisoned. Similarly, obstruction of the drainage of any natural or artificial drain is prohibited. *916 LSA-R.S. 38:214. Attention is directed, in the official reporter's notes, to the aforesaid article of the criminal code to the effect that
"The fact that these sections make the placing of certain obstructions crimes, does not prevent an individual from bringing civil suit for the removal of the same obstructions. Allard v. Lobau, 2 Mart., [(N.S.)], 317 (1824)."
The prevention of obstructions on public places or on navigable waters has been long recognized as a matter of public policy. LSA-C.C. Art. 861; Blanchard v. Abraham, 115 La. 989, 40 So. 379; Goodwill v. Police Jury, 38 La.Ann. 752; Ingram v. Police Jury of Parish of St. Tammany, 20 La.Ann. 226.
The judgment appealed should be, and it is, therefore, affirmed at defendant-appellant's cost.
Affirmed.