265 So.2d 765

**John G. DISCON et al.**

v.

**SARAY, INC., et al.**

No. 52068.

June 29, 1972.

Dissenting Opinion July 24, 1972.

Rehearing Denied July 31, 1972.

---

Badeaux, Discon & Cumberland, J. Michael Cumberland, New Orleans, for plaintiffs-applicants.

Harry R. Cabral, Jr., Metairie, J. Stuart Douglas, New Orleans, for defendants-respondents.

McCALEB, Chief Justice.

In this injunctive proceeding the plaintiffs seek to prevent Ray Lamastus [1] from obstructing passage through Facianc Canal, so as to impede navigation thereon, said canal being located north of and generally parallel to a portion of the north shore of Lake Pontchartrain in St. Tammany Parish. Plaintiffs are the owners of property bordering on the canal who use the canal as a means of ingress and egress for their watercraft in Lake Pontchartrain.

Following a hearing, the trial court, which had previously issued a temporary restraining order, granted a preliminary injunction prohibiting the canal's closure. The judgment was reversed on appeal and remanded, the Court of Appeal stating:

"Inasmuch as there was no stipulation that the trial on the rule for preliminary injunction would also constitute the trial on the merits seeking a permanent injunction as prayed for by plaintiffs, the suit is not dismissed but is remanded to the trial court * * *." La.App., 255 So.2d 489. We granted certiorari, 260 La. 681, 257 So.2d 148.

Plaintiffs urge that the obstruction of navigable waterways is reprobated by R.S. 14:97 [2] and that under this provision, as applied by the Court of Appeal, Fourth Circuit, in D'Albora v. Garcia, La.App., 144 So.2d 911 (1962), cert. den., to another canal bordering Lake Pontchartrain, the action of the defendant is prohibited.

The Court of Appeal found that Faciane Canal is a navigable waterway, and that

---

1. Initially, two corporations, Saray, Inc. and Lamastus and Associates, Inc., were also named as defendants. However, a judgment dismissed them from the suit and no appeal was taken therefrom.

2. "Simple obstruction of a highway of commerce is the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult.

"Whoever commits the crime of simple obstruction of a highway of commerce shall be fined not more than two hundred dollars, or imprisoned for not more than six months, or both."

the defendant owns that part of the waterway running through his property. It held, however, the right of the plaintiffs to use the waterway constituted merely a servitude of passage which, under the provisions of Civil Code Arts. 703 and 777, may be changed to another location by the owner of the servient estate; and that, since the defendant has offered for the use of plaintiffs another, different canal by which they will have navigational access through his property, he has satisfied the provisions of the cited Civil Code articles. For these reasons, it concluded that plaintiffs were without right to maintain their action to prevent defendant from closing Faciane Canal where it goes through his property in order to give him a better utilization of his land.

We understand from the record that Faciane Canal was constructed in the mid-1950's. It was included in a subdivision development known as the North Shore Beach Subdivision. The 168 lots therein (each 100 feet in width) lie along the edge of Lake Pontchartrain. The Canal and a road designated as Carr Drive are shown on the subdivision plat to the rear of the lots and roughly parallel the shore of the lake. The canal and roadway are approximately three and one-half miles long. Access to the lake is available through only one end of the canal, the other end running into the Southern Railway tracks.

The defendant owns the property on both sides of the canal where the canal enters the lake, and desires to fill in the canal at that point for almost 700 feet, in order to have direct access to his property on each side. For convenience we attach hereto that portion of the subdivision plat (a survey conducted by F. C. Gandolfo, Jr., dated September 23, 1954), which shows the area where the canal enters the lake and where defendant proposes to close the canal. The part of the canal between the "x's" (which we have placed on the plat) is the area where the witnesses at the hearing estimated that the closure was attempted.

[See following illustration]

CERTIFICATES OF APPROVAL

Approved by the Police Jury of the
Parish of St. Tammany at its regular
meeting held on, 10-14-1954.

................................
President of the Police Jury.

I have examined the plans of the
subdivision shown hereon, and the same
is hereby approved

................................
Chairman Subdivision Committee
Police Jury of St Tammany Parish.

I hereby certify that I have received
a copy of this approved plan

Clerk of Court.

# NORTH SHORE BEACH

### NORTH SHORE BEACH SUBDIVISION INC.
#### OWNER AND SUBDIVIDER

### ST TAMMANY PARISH, LOUISIANA

BEARINGS AND COORDINATES HEREON
REFER TO THE LOUISIANA GEODETIC
SURVEY PLANE GRID SYSTEM.
[755Z]

■ We entertain no doubt but that the lower courts were correct in their conclusion that the canal is navigable. It is fifty to sixty feet wide, and wider in some areas. Witnesses estimated its depth as being between ten to fifteen feet. Boats up to thirty or thirty-five feet in length regularly use the canal and larger boats have used it from time to time. Principally these boats belong to the owners of the abutting property and are used for pleasure purposes. However, floating pile drivers and barges have also been in the canal in connection with the construction of boat houses and piers. Indeed, it appears to be conceded in defendant's brief that the canal is navigable in fact. However, defense counsel argue that it is not navigable in law because there is no commercial traffic thereon, and that since the abutting property is restricted to residential use there will be no commercial use of the canal.

We find that the record does not bear out this contention. As shown, the canal has been used by commercial floating pile-drivers and barges. And that part of the canal abutting the defendant's property, which is commercially zoned, has been used commercially as a rented dock for crew boats used in oil operations. (The first six lots which are owned by defendant are zoned for commercial purposes.)

In any event we think that the court in D'Albora v. Garcia, supra, correctly stated that.

"* * * the capability of use by the public for purposes of transportation and commerce affords the true criterion of navigability rather than the extent and manner of use. Economy Light & Power Co. v. United States, 256 U.S. 113, 122, 123, 41 S.Ct. 409, 412, 65 L.Ed. 847; United States v. The Montello, Etc., 20 Wall. 430, 22 L.Ed. 391. Nor, as was pointed out in United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243, does the lack of commercial traffic preclude a conclusion of navigability where personal or private use by boats demonstrates the navigability of the stream for a type of commercial navigation. * * *

"It was particularly pointed out in the United States v. Appalachian Electric Power Co. case, supra, that the conditions of exploration and settlement of an area explained the infrequency or limited nature of such use of waters as highways of commerce, and that the lack of commercial traffic does not preclude the conclusion that a body of water is navigable where personal or private use demonstrates the capability of the stream for a type of commercial navigation; the question of the availability of the body for navigation is controlling rather than the extent of commerce conducted thereon. A similar observation was made by the Louisiana Supreme Court in State v. Jefferson Island Salt Mining Co., supra."

Inasmuch as we have found that the canal is navigable on the basis of other evidence, we do not deem it necessary that it be determined whether it is subject to tidal ebb and flow (which concededly is one indicia of navigability). But because of defense counsel's heavy reliance on this factor as distinguishing this case from D'Albora, we have examined the record to find whether it sustains their assertion that, unlike the canal in D'Albora, the Faciane Canal is not affected by a regular ebb and flow of the astronomical tides (as distinguished from the wind tides). The meteorologist who testified for defendant on this point did not testify that the *Faciane Canal*, as distinguished from Lake Pontchartrain, is not so affected, he testified that *none of Lake Pontchartrain* is subject to an atmospheric or astronomical tide. He did state, however, that if tide is considered as an ebb and flow that then there was an ebb and flow in the lake. He gave no testimony in this regard applying specifically to the canal. On the other hand, witnesses who have spent considerable time on the canal [3] testified that there is a daily ebb and flow in the canal of eight to ten inches. In other words, the canal *is* affected by an ebb and flow in the same manner as is the lake and in the same fashion as the canal involved in D'Albora.

Hence, because the canal is navigable, there can be no question but that it is subject to the provisions of R.S. 14:97.

Manifestly, the complete blockage of the canal by defendant where it passes his property not only renders "movement thereon more difficult," (R.S. 14:97) it renders movement thereon impossible.

Defense counsel counter with the argument that there is available to plaintiffs for access to Lake Pontchartrain in their boats another alternate route— a man-made canal to the north of Faciane Canal. It also traverses defendant's property. But R.S. 14:97 does not permit a violation of its terms when there is an available alternate route. Surely, as to roadways, one might not obstruct their use, simply because another road across his property is available. And there is nothing contained in the language of the statute which would permit a differentiation between roadways and navigable waterways.

Moreover, in the instant case, the record abundantly establishes that the canal passageway for watercraft is not merely a servitude but is a dedicated right-of-way for such use. Exhibit 1, the plat of the subdivision heretofore referred to and part of which is here reproduced, shows lot 1 through lot 168 with the canal and Carr Drive just to the rear of the lots. It was

3. The meteorologist testified that he had gone only one time to the canal site and that he had otherwise spent very little time on the lake itself.

filed in the office of the District Court clerk, May 13, 1955. The deeds under which each of the plaintiffs acquired their titles recite that the property purchased is a specified lot in the North Shore Beach Subdivision as shown by the Gandolfo Survey and that the "Building and Ownership Restrictions, of North Shore Beach Subdivision, which apply to the above described property, are a part of the consideration between the parties hereto and have been placed on record in the office of the Clerk of Court for St. Tammany Parish, Louisiana. A copy attached hereto." The Building and Ownership Restrictions attached to the . deed recite that the subdivision is "composed of Lots of ground (Lots 1 thru 168) together with a 65 foot road to be known as Carr Drive and a private canal to be known as Faciane Canal * * *." The document further provides:

"The private canal shown on the map as 'Faciane Canal' is declared to be for the use and benefits of the lots in the said subdivision, but neither said lots nor the owners thereof shall ever acquire any rights in said canal, the title of which is, and shall remain in, the name of the North Shore Beach Subdivision, Incorporated and its assigns forever."

We need not determine now whether the dedication here involved amounted to a public dedication or was merely a dedication for the benefit of the property owners of the subdivision. But the very least that

can be said is that it was for the benefit of the subdivision's lot-owners, and the canal as situated could no more be rerouted by any of the adjacent owners than could Carr Drive. Iseringhausen v. Larcade, 147 La. 515, 85 So. 224 (1920); James v. Delcry, 211 La. 306, 29 So.2d 858 (1947); and Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965).

■ Furthermore, even were we to concede, as defendant admits, that plaintiffs' right to use the Faciane Canal is merely a conventional servitude, we have concluded that they are entitled to the relief they seek in this suit.

In brief and oral argument in this Court, defense counsel acknowledge that a servitude of passage is owed, but they argue that the relocation is within the discretion of the owner of the servient estate under the provisions of Civil Code Arts. 703, 777.

■ However, Article 703 is without relevance here, inasmuch as its provisions apply only to servitudes of passage imposed *by law* in favor of an enclosed estate. If any of the codal articles is applicable it would be Article 777 which deals with the change of location of a conventional or voluntary servitude. It provides:

"The owner of the estate which owes the servitude can do nothing tending to diminish its use, *or to make it more inconvenient.*

"Thus he can not change the condition of the premises, nor transfer the exercise of the servitude to a place different from that on which it was assigned in the first instance.

"Yet if this primitive assignment has become more burdensome to the owner of the estate which owes the servitude, or if he is thereby prevented from making advantageous repairs on his estate, he may offer to the owner of the other estate a place *equally convenient for the exercise of his rights,* and the owner of the estate to which the servitude is due can not refuse it." (Emphasis ours)

Our study of the record convinces us that the "alternate" passageway or canal is not "equally convenient" for plaintiffs to use as the Faciane Canal. It is somewhat longer (200 feet), although this of itself might not necessarily render it sufficiently inconvenient as to deny relocation. But the maps and plats in evidence indicate numerous curves, right-angle bends and so on in the alternate route, not to be found in the presently existing canal. And several witnesses testified that the bends of the alternate route make it not only less convenient, but more dangerous as well. (It was stipulated that a number of other witnesses called by plaintiffs would testify to the same effect.) One witness testified that with certain, but not unusual wind conditions, he cannot get through the canal at all.

It occurs to us, if defendant can block passage of the canal as it passes by the lots owned by him to suit his convenience, and require that the other owners of the subdivision use an alternate route, then other owners along the canal should be able to do likewise when it suits their convenience. This would lead to an impossible situation to the other users of the canal, and should not be permitted.

Because the alternate route is less convenient, and even dangerous to use, the plaintiffs should not be forced by closure of Faciane Canal to accept it as a substitute. It is true that defendant testified that he intends to make some changes in the canal which would widen it at some points. However, he is not obligated to make these changes. Indeed, if permitted to change the present route, he may well decide at some later date to provide another route even further north.

In concluding this phase of the case a word should be said in regard to the assertion of defense counsel that defendant has obtained written permission from various federal, state and parish agencies to close the canal. These agencies are the Department of the Army, New Orleans District, Corps of Engineers, the State Stream Control Commission, the Louisiana Wildlife and Fisheries Commission, the State Department of Public Works and the St. Tammany Parish Police Jury.

■ It is clear from the written communications themselves that the documents relied on by defendant do not constitute a permit to close or fill a canal. As testified to by the agents of most of these various political bodies, they did not issue a permit but merely indicated that they had no objection to the proposed construction. The representative from the State Stream Commission testified that so long as the project did not involve pollution from industrial waste (such as from manufacturing installation) that department had no interest or control of the matter, and that its letter of no objection had nothing to do with the closing of a canal.

Dr. Lyle St. Amant of the Wildlife and Fisheries Commission testified that the letter to him from defendant "only requested approval for the construction of a pier bulkhead and a jetty" and "some dredging and filling on what appeared to be private property." He said that his department had no objection to such work "since it did not appear that it would affect the general interest of the public with respect to Wildlife and Fisheries in Lake Pontchartrain." And he specifically stated that defendant's letter did not request or indicate the closure of a canal. Mr. C. J. Nettles of the Corps of Engineers testified that his department issues permits for construction of facilities in navigable waterways, that the permit issued by it was "for construction in Lake Pontchartrain" of a jetty, bulk-

head and pier and that it did not cover operations of the canal. Likewise, the representative of the Department of Public Works testified that the permit and approval of that department was merely for the construction of a pier, bulkheads and a jetty on the shore of the lake and had nothing to do with giving approval or permit or no objection letter for the filling of a canal.

During oral argument, defense counsel asserted that, pending the hearing in this Court, the defendant has partially filled in the Faciane Canal and has widened and enlarged the alternate canal in some areas, so that some of the objections to its use have been removed. They, therefore, contend that the issue presented is moot.

■ First of all, since these stated facts are not in the record, we cannot take cognizance of them. Nor are we able to determine from these statements whether the changes might have made the canal's use more onerous. For instance, defendant's counsel suggest that the purpose of the dredging is so that they can construct a marina and boat harbor along a considerable portion of the new canal. Moreover, the photographs would indicate that the route is still longer, curves and bends remain and the congestion engendered by the operation of such boating facilities might well make the alternate canal's use even more burdensome than it is now. Nor can the asserted claim that defendant has al-

ready partially filled the canal, in spite of the trial court's injunction not to do so, relieve him of the obligation of permitting plaintiffs access to the lake through the Faciane Canal in accordance with that order.[4]

Lastly, it is asserted that defendant's "Exception of Jurisdiction and Venue" should have been maintained, the exception having been based on the allegation that the defendant is a resident of Orleans Parish and should have been sued there rather than in the Parish of St. Tammany where this suit was brought.

⬛⬛ This alleged error was neither discussed in the brief nor was it orally argued. The record indicates that the exception was dismissed because of defendant's failure to file it in accordance with the rules of the trial court. In the absence of any comments to the contrary, we must assume that the trial judge's ruling was correct. See Code of Civil Procedure Article 193. Moreover, we observe that the exception was filed on September 11, 1970, or three days after the answer was filed on September 8, 1970. It was, therefore, not timely. Code of Civil Procedure Articles 44 and 928.

For the reasons assigned the judgment of the Court of Appeal is reversed and set aside. The judgment of the district court is reinstated and made the judgment of this Court. Defendant is taxed with all costs.

BARHAM, J., concurs.

SUMMERS, J., dissents and assigns reasons.

SUMMERS, Justice (dissenting).

In order to properly analyze the legal issues involved, it is first necessary to un-

---

4. The appeal from the trial court's injunction judgment was not suspensive. The fact that the Court of Appeal set aside that judgment did not relieve defendant of the obligation of continuing to comply with the injunction because the Court of Appeal judgment has never become executory in view of the timely filing of the application for a writ of certiorari to this Court by plaintiffs and our order granting it. Art. VII, Sec. 11 of the Louisiana Constitution.

In this connection we note that defense counsel have strongly emphasized and argued the disastrous financial effect on defendant of a judgment denying him the right to close the canal. It is indeed unfortunate, and we have the utmost sympathy with defendant if the allegations of his counsel are true. However, we cannot decide lawsuits on that basis. Either the defendant has the right to close Faciane Canal or he does not. The canal was in existence and was being used by plaintiffs when defendant purchased the property, and unwisely commenced and continued development over the objections of the plaintiffs without first ascertaining through a declaratory judgment or other appropriate action his legal right to obstruct their passage through the canal. Besides, he apparently has compounded his financial position, of his own volition, by continuing expenditures for partially filling the canal and other development despite the district court's unfavorable judgment enjoining the blocking of the canal, which judgment is still in force and effect as we have heretofore shown in this footnote.

derstand the facts which this record supports.

It is error, plain on the face of the record, for the Court to consider the canal in controversy as dedicated to the public. The fact that the canal appears on the subdivision plat as a boundary to the subdivision does not make it part of the subdivision in the sense that it is a "dedicated" canal for public use any more than the other streams shown on the plat, placed there to orient the subdivision in relation to known geographical and topographical landmarks.

Careful attention to the subdivision plat reveals quite clearly that the survey of the subdivision ends at the south bank of the canal. On the other hand, Carr Drive is part of the subdivision and provides a public way for ingress to and egress from each lot. In fact, the restrictive covenants of the subdivision make the private ownership of Faciane Canal unmistakable in these terms:

The *private canal* shown on the map as "Faciane Canal" is declared to be for the use and benefits of the lots in the said subdivision, *but neither said lots nor the owners thereof shall ever acquire any rights in said canal, the title of which is, and shall remain in, the name of the North Shore Beach Subdivision, Incorporated and its assigns forever.* (Emphasis Added.)

I note parenthetically here that North Shore Beach Subdivision, Inc., is the ancestor in title of defendant. The very wording of the preamble to the restrictions affecting this property makes the private character of the canal clear, viz.:

A certain subdivision in the Parish of St. Tammany, Louisiana at the place known as North Shore, in a portion of sections 25 and 26, all of section 36 in T 9 S, R 13 E, and portions of sections 30 and 31 in T 9 S, R 14 E, composed of Lots of ground (Lots 1 thru 168) together with a 65 foot road to be known as Carr Drive and a *"private" canal to be known as Faciane Canal,* all bounded by the Southern Railroad Right of Way, on the East, Lake Pontchatrain portions of sections 31 and 32, on the South, Bayou Buisson on the West and a salt water marsh on the North, all more particularly shown on two plans of subdivision by F. C. Gandolfo, Jr., Surveyor, dated July 28, 1954. (Emphasis added.)

Again the restrictive conditions affecting the property of plaintiffs make clear the "private" nature of the canal. Thus:

North Shore Beach Subdivision, Incorporated, *owns other lands* in the vicinity of the land described and nothing herein shall be construed to obligate it to place restrictions, reservations or conditions on such other lands. Any of said restrictions or conditions governing the use or disposition of North Shore Beach Subdi-

vision property may be modified upon the agreement of the owners of 75% of the land in the Subdivision. These restrictions with changes made as provided herein, shall be binding on all land owners in North Shore Beach Subdivision for a period of twenty years from date of recordation of these restrictions. But no action which will effect the ownership of the mineral rights and servitudes, *the private nature of the canals* and roadways and the right to build boathouses and structures *shall ever be taken.* (Emphasis added.)

In the area where the 700-foot length of the Faciane Canal is being filled in, defendant owns the bed of the canal and the land on both sides.

Private ownership of the Faciane Canal is further evidenced by the declarations of representatives of governmental agencies that they were without authority to regulate defendants' actions within the canal. These agencies are the Department of the Army, New Orleans District, Corps of Engineers; The State Stream Control Commission, Louisiana Wildlife and Fisheries Commission; The Louisiana Wildlife and Fisheries Commission; The State of Louisiana, Department of Public Works and the St. Tammany Parish Police Jury. Two of the witnesses testifying for these agencies declared Faciane Canal was a "privately owned waterway" and a "private canal".

Actually, there seems to be no real dispute as to the private ownership of the Faciane Canal, the real issue contested in the lower courts was the navigability of the canal as that term is used in Article 97 of the Criminal Code (La.R.S. 14:97) and the applicability of Articles 703 and 777 of the Civil Code.

In my view the navigability or nonnavigability of the Faciane Canal is unimportant. What is important insofar as Article 97 of the Criminal Code is concerned is whether the canal is privately owned or whether it is public. If it is privately owned, Article 97 has no application.

Article 97 of the Criminal Code provides:

> Simple obstruction *of a highway of commerce* is the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, *navigable waterway,* road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult. (Emphasis added.)

The term "highway of commerce" as used in the foregoing article means a public way. This is the universal meaning attached to the word "highway": A way open to the public at large, for travel or transportation, without distinction, discrimination, or restriction, except such as is incident to regulations calculated to secure to the general public the largest practicable

benefit therefrom and enjoyment thereof. Ray v. Terry, 32 Ala.App. 582, 28 So.2d 916 (1947); Dubuque v. Maloney, 9 Iowa 450 (1859); Baltimore v. DePalma, 137 Md. 179, 112 A. 277 (1920); Commonwealth v. Charleston, 1 Pick. 180 (Mass.1822); Macomber v. Nichols, 34 Mich. 212 (1876); McQuinn v. Missouri P. R. Corp., 122 Neb. 423, 240 N.W. 515 (1932); Davis v. New York, 14 N.Y. 506 (Court of Appeals 1856); Hildebrand v. Southern Bell Tel. & Tel. Co., 219 N.C. 402, 14 S.E.2d 252 (1941); Sumner County v. Interurban Transp. Co., 141 Tenn. 493, 213 S.W. 412 (1918); Nichols v. State, 120 Tex.Crim. 219, 49 S.W.2d 783 (1932); Prillaman v. Commonwealth, 199 Va. 401, 100 S.E.2d 4 (1957); State ex rel. Oregon-Washington R. & Nav. Co. v. Walla Walla County, 5 Wash.2d 95, 104 P.2d 764 (1946); State ex rel. Happel v. Schmidt, 252 Wis. 82, 30 N.W.2d 220 (1947); 39 Am.Jur.2d, Highways, Streets and Bridges § 1; 39 C.J.S. Highways § 1, p. 909; Webster's New International Dictionary (3d ed.).

When the word highway is combined with others, as in the quoted article, to form the term "highway of commerce", the imputation that a public way is intended is emphasized. It must be conceded that, as used here, "commerce" implies extensive trade and travel such as one would expect upon a public highway. It connotes a public activity as distinguished from a private one. Add to this the context in which

"highway of commerce" is used: the article refers to a railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, all of which are invariably public. Thus the meaning the article seeks to convey becomes clear. The intention is to define as a crime the obstruction of public ways. Thus a public navigable waterway is intended to be within the scope of the article, not a private canal, built by private enterprise on private property—a waterway the use of which has been granted to others by the owners under restrictions and limitations imposed by contract; a waterway the use of which is regulated by private agreements. Such a waterway is not a public waterway within the intendment of Article 97, despite the fact that it is clearly navigable and is extensively used by those entitled to the right.

It is manifestly absurd to say that a person cannot obstruct a private canal on his private property even if it is navigable. Of course, and this is the question I shall address myself to later in this dissent, if the owner of the canal has granted rights to others for the use of the canal, as in this case, obstruction of the canal by the owner will be governed by the contract between the parties, the law pertaining to contracts, servitudes or other civil laws addressed to the particular problem. Article 97 will have no bearing upon the rights of the parties in the private canal.

Only when the canal is a "highway of commerce" and a public way does Article 97 come to bear.

This is not the first time the question of the rights of an owner of a private canal has been adjudicated by this Court. In Harvey v. Potter, 19 La.Ann. 264 (1867) the question was: "has the proprietor of a tract of land the right to excavate, entirely within his own boundaries, and exclusively at his own expense, a canal for the purposes of navigation, and to require payment for its use by all who choose to avail themselves of its facilities? * * *"

The Court answered this question, saying: "It is not easy to perceive how, in such a case, the public becomes seized of the right to the gratuitous use of advantages afforded by individual labor and enterprise." The matter seems elementary to me, but the transgressions of the majority opinion in the case at bar upon fundamental principles do such violence to the law, and the opinion in Harvey v. Potter is so lucid, logical and well-reasoned that I shall quote further:

> The right of expropriation, it is true, belongs to the public, and the land and canal so constructed upon it, might, under constitutional and legal provisions, become public property, and be appropriated to public use. But where no public need exists for such conversion, and the property in its entirety is subjected to private ownership, it would seem that the proprietor has the right, *in any manner he deems best,* to render that property most productive, subject only to the rule *"sic utre tuo ut alienum non laedas."* * * * Private property shall not be taken for public uses, without ample remuneration first made to the owner. This is a fundamental principle. So it would seem clearly to follow that private property cannot be used by the public without compensation for that use. Suppose the plaintiffs in this case, should refuse to permit the defendant to use their canal, would an action of damages lie against the owner? If not, it must appear that the defendant is not entitled to require the use of the canal free of charge, as he would have to require the free use of a navigable stream, or a public road. (Emphasis added.) 19 La. Ann. 265.

It is an obvious extension of the principles announced in Harvey v. Potter to say that if the owner of the canal can prevent its use by imposing charges or otherwise, he may just as rightly fill in his private canal, subject, of course, to whatever rights the plaintiffs here may have previously acquired by law or by contract from the owner of the canal. In any event, Article 97 dealing as it does with "highways of commerce", has no relevance to the owner's use of a private canal on private property constructed by private enterprise.

The other issue, and I submit the only proper issue presented for the Court's decision, involves the interpretation of Article 777 of the Civil Code. In my opinion the article was designed specifically to cover such a fact situation as this case presents. It reads as follows:

> Art. 777. The owner of the estate which owes the servitude can do nothing tending to diminish its use, or to make it more inconvenient.
>
> Thus he can not change the condition of the premises, nor transfer the exercise of the servitude to a place different from that on which it was assigned in the first instance.
>
> Yet if this primitive assignment has become more burdensome to the owner of the estate which owes the servitude, or if he is thereby prevented from making advantageous repairs on his estate, he may offer to the owner of the other estate a place equally convenient for the exercise of his rights, and the owner of the estate to which the servitude is due can not refuse it.

It is evident that the servitude of passage through the canal which defendant's ancestors in title granted to plaintiffs has become more burdensome to defendant. So much so, in fact, that he is threatened with a disastrous financial loss and a virtual removal of valuable property from commerce if he is unable to fill the canal and obtain access to his property. This fact is supported by the record and is not seriously disputed. The real issue turns on whether the alternate route proposed by defendant is "equally convenient" for the exercise of plaintiffs' right of passage.

The alternate route will be two hundred feet longer than the original route. Aside from some contention that the alternate route will be more inconvenient because of the difficulty of maneuvering vessels through it and because of increased hazards to navigation, there is no other objection to the alternate route.

I do not consider as serious the claim that the alternate route will present substantial problems to free movement of vessels. The claim is not supported by substantial evidence. For instance, the example the majority cites has to do with one of plaintiffs' witnesses who testified on direct examination that under certain wind conditions he cannot get through the canal at all. A review of this witness' testimony on cross-examination discloses that he was referring to his paddle boat, a small craft on pontoons with a seat, bicycle pedals and a paddle wheel for propulsion. It is easy to see that in all wind conditions such a craft is difficult to maneuver. This would be true regardless of where the attempt was made to navigate. The alternate route has no bearing upon the difficulty experienced in maneuvering this unmaneuverable craft.

The claim that the alternate route is more dangerous is also uncorroborated by any convincing evidence. The fact that a collision occurred on this alternate route in 1969 between vessels navigating its channel does not indicate, even remotely, a conclusion that the alternate route is dangerous. There is an inherent danger in the navigation of watercraft, regardless of the location. Particularly is this true where amateurs are at the helm.

In fine, therefore, the additional length is the essence of the complaint that the alternate route is less convenient. It is two hundred feet longer than the original route. In my view this is not such an inconvenience which should deprive defendant of the right to designate the alternate route and put his valuable property to useful purposes. The inconvenience plaintiffs will experience by navigating their boats 900 feet instead of 700 feet through defendant's property is minimal. It should be kept in mind, also, that plaintiffs' boats are pleasure craft which are only used occasionally. The central issue before us requires a balancing of the conveniences between the parties. An overview of the entire case requires a reversal of the majority opinion.

I respectfully dissent.