356 So.2d 551 (1978)
VERMILION CORPORATION, Plaintiff-Appellee,
v.
Norman VAUGHN, Defendant-Appellant.
No. 6258.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1978.
*552 Mouton, Roy, Carmouche, Hill, Bivens & McNamara by John K. Hill, Jr., Lafayette, for defendant-appellant.
Cooper & Sonnier by Charles R. Sonnier, Abbeville, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX, and WATSON, JJ.
DOMENGEAUX, Judge.
This suit involves the right of the public to use man-made navigable canals on private property constructed and maintained with private funds.
This case was consolidated for trial and appeal with Vermilion Corporation v. Freddie Broussard, 356 So.2d 556, No. 6259 (La.App. 3rd Cir. 1978), and Vermilion Corporation v. Larry J. Broussard, 356 So.2d 557, No. 6260 (La.App. 3rd Cir. 1978).
The issues are the same in these three cases, and will be discussed herein, although separate opinions in each case are being rendered on this day.
Vermilion Corporation, plaintiff-appellee, leases 125,000 acres of land in Vermilion Parish owned by the Exxon Company. The land is traversed by a system of man-made canals. The canals are approximately 60 feet wide and 8 feet deep, are subject to tidal fluctuations, and are navigable in fact. They were constructed with private funds and have been under the continuous control, possession, and supervision of Vermilion Corporation, Exxon Company, and all prior owners since the 1900s.
The canal system enters other naturally navigable waterways and lies between the Intracoastal Canal on the north, the Gulf of Mexico on the south, West Cheniere Au Tigre Canal on the east, and Rollover Bayou on the west. The canals are used to facilitate hunting, trapping, and fishing activities, and are also used by the Exxon Company for hydrocarbon exploration and development activities. Vermilion Corporation subleases portions of the land to hunters, trappers, and fishers. The right to use the canals is a part of the lease arrangement.
In order to control access to the land and the canals, over 400 "No Trespassing" signs are posted in various locations. In addition persons have been continuously employed to supervise activities in the canals and on the land. On numerous occasions Vermilion Corporation has prohibited persons from entering and using the property.
*553 The present controversy arose when the defendants-appellants, Norman Vaughn, Freddie Broussard, and Larry J. Broussard, continued to enter the property and travel the canals in order to engage in commercial fishing and shrimping activities without obtaining plaintiff's permission. These individuals disregarded several written warnings issued by plaintiff. Consequently, these suits were filed seeking permanent injunctions enjoining the three defendants from trespassing on the property and in the canals and damages.[1]
After affidavits and a deposition were filed into the record, the corporation moved for summary judgments, which were granted by the trial court. Permanent injunctions against Vaughn and the Broussards were issued. They have perfected devolutive appeals.
Defendants contend on appeal that the trial court erred in two respects:
1. In finding that there was no issue of material fact and, therefore, in granting the motions for summary judgment, and
2. In finding that the canal could be controlled by the plaintiff and, therefore, in granting the permanent injunctions.

I. SUMMARY JUDGMENTS
Article 966 of the La.Code of Civil Procedure provides:
"The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
In the present case the parties are in agreement on all relevant facts that are genuinely material to this case and upon which a judgment can be rendered. There is no question that the canals are navigable and were built and maintained with private funds on private property. It is not contested that defendants did engage in fishing and shrimping activities in the canals without permission.
Defendants contend, however, that there is a fact in dispute which is genuinely material to this litigation and that summary judgment was improper. They claim that plaintiff's system of artificial waterways destroyed the navigability of surrounding natural waterways. They argue that this is material because, if true, the court could conclude that the system of artificial waterways was substituted for the pre-existing natural system of navigable waterways. If such a conclusion were reached, the canals would not be private and could not be privately controlled under state and federal law.
We do not agree. A similar argument was raised in Ilhenny v. Broussard, 172 La. 895, 135 So. 669 (1931), the facts of which are almost the same as in the present case. The plaintiff in that case, E. A. Mcllhenny, constructed a private canal on his property. The defendant, Broussard, continued to use this canal without Mcllhenny's permission. Mcllhenny sought to enjoin Broussard from using his private waterway. The contention was made that the waters from a natural canal were diverted by the man-made waterway and that therefore the man-made waterway was substituted for the natural waterway. The Louisiana Supreme Court rejected the argument stating that the diversion of water from a natural channel by a private man-made waterway does not *554 give rise to a right of the public to use the man-made waterway.[2]
Defendants also contend that this litigation is too important to be disposed of by summary judgment. We fail to see the validity of this argument. Simply because there is no issue of material fact does not mean that the courts will not give a case full and complete treatment. Summary judgment merely avoids a full trial where the need does not exist. The effect of a case on Louisiana law is not a valid reason for denying a party's right to summary judgment.
We therefore find no error on the part of the trial court in granting summary judgment in favor of plaintiff.

II. THE INJUNCTIONS
Defendants contend that the injunctions should not have been granted as a matter of state and federal law. They argue that under La.R.S. 14:97[3] and under 33 U.S.C.A. Sec. 403[4] (§ 10 of the Rivers and Harbors Act) a private individual may not exert dominion over a navigable waterway.
With regard to state law, this court discussed the application of La.R.S. 14:97 to a private canal in National Audubon Society v. White, 302 So.2d 660 (La.App. 3rd Cir. 1974), writ denied 305 So.2d 542 (La.1975), a case which defendants contend was erroneous and should be overruled.
The facts of Audubon mirror those in the present controversy. In that case a private canal was constructed in 1912 by E. A. Mcllhenny on his property in Vermilion Parish. The canal, which was the same canal involved in Ilhenny v. Broussard, supra, was navigable and connected with Vermilion Bay. In 1924 a portion of the land, including a part of the canal, was donated to the National Aubudon Society. That organization used the property to operate the Paul J. Rainey Wildlife Sanctuary. The Audubon Society maintained their portion of the Mcllhenny canal with its own funds. Access to the canal was restricted by the Audubon Society as it was restricted prior to the donation. The defendant in that case, Joseph White, used the canal without permission for fifty years to haul cattle, cotton, vegetables, and fruit to the market. In 1971 and 1972 he was notified by the Audubon Society that he could no longer use the canal. These notices were disregarded and suit for a permanent injunction to enjoin him from using the canal followed.
This court granted the injunction and held that a canal built entirely on private property with private funds for private purposes is a private thing. White contended that a landowner was prohibited from obstructing any navigable waterway, regardless *555 of whether it was constructed with private funds, by virtue of La.R.S. 14:97, as applied by the Supreme Court in Discon v. Saray, Inc., 262 La. 997, 265 So.2d 765 (1972), and the Fourth Circuit in D'Albora v. Garcia, 144 So.2d 911 (La.App. 4th Cir. 1962).
In Discon, landowners whose property bordered on a navigable canal dedicated for the use of the property owners, sought to enjoin another landowner from obstructing a portion of the canal. The Supreme Court concluded that plaintiffs were entitled to injunctive relief under La.R.S. 14:97. In D'Albora an injunction was sought to enjoin the owner of land from restricting passage on a navigable canal running through his property. The canal was dug by the State of Louisiana to obtain dirt for the construction of a highway. The Fourth Circuit affirmed the action of the trial court in granting the injunction on the basis of La.R.S. 14:97.
We distinguished Discon and D'Albora in Audubon on the basis that the canals in those cases were either built with public funds or involved a dedicated right of way. We held that La.R.S. 14:97 was inapplicable to a private canal which was not part of the public domain or was not dedicated to the public use, stating the following:
"We distinguish the D'Albora and Discon cases from the instant suit, because in each of those cases the canal was either a part of the public domain or it had been dedicated for use by the owners of property in the subdivision in which the canal was located.
We have concluded that LSA-R.S. 14:97 does not apply to a privately owned canal, even though it may be navigable. We agree with the views expressed by Professor A. N. Yiannopoulos, in discussing the case of Discon v. Saray, Inc., supra, where he stated:
`The majority opinion necessarily rests on the assumption that the canal in question was burdened with a servitude of public use. Indeed, it would be inconceivable to apply article 97 of the Criminal Code to a strictly private waterway. The majority proceeded on the idea that this article was applicable because the canal was navigable, and, therefore, was burdened with a servitude of public use; in the alternative, that the canal was burdened with a servitude of public use by virtue of dedication. No one, however, should be prepared to accept the proposition that all navigable waterways in Louisiana are subject to public use merely by virtue of the fact they are navigable. A privately owned canal, though navigable in fact, may not be subject to public use, for the same reasons that a private road, though used by commercial traffic, may not be subject to public use. Thus, the disposition of the case would be correct only if the canal in question had been dedicated to public use.' (Emphasis added)"
302 So.2d 660, 667-668.
We are convinced that the decision of National Audubon Society v. White was correct and apply it to this case. We hold that a canal on private property constructed and maintained with private funds and used for private purposes is a private canal subject to private control.
With regard to federal law, defendants have cited several federal cases[5] for the proposition that under 33 U.S.C.A. Section 403, private individuals cannot control navigable waterways.
*556 We have examined all of the federal cases and found them completely distinguishable from the present litigation. The cited cases involved situations where the United States was either seeking to expropriate private property or seeking to prevent the impairment of naturally navigable waterways.
In any event, we fail to see how 33 U.S.C.A. Section 403 would forbid a landowner from prohibiting the general public from using his private canal. The statute grants authority to the Chief of Engineers and the Secretary of the Army to control waterways, but it does not grant individuals the unrestricted right to use a privately owned navigable canal. Our research has revealed the case of United States v. Kaiser-Aetna, 408 F.Supp. 42 (D.Hawaii 1976), in which the United States attempted to use the same legislation to force Kaiser-Aetna to open a private marina in Hawaii to the public. The marina was originally a lagoon, Kuapa Pond, which was used as a fishing spot by the Hawaiian natives. The lagoon connected with Maunalua Bay, a navigable waterway. Under Hawaiian property law there was no question that the fish pond was private property. Kaiser-Aetna acquired interests in the pond and surrounding land. It developed a subdivision and transformed the fish pond into a marina. Use of the marina was restricted, and all commercial vessels were excluded.
The federal court recognized the regulatory power of the federal government under its admiralty powers, but it refused to find that the United States could appropriate the waterway to public use without reasonable compensation. The Court stated:
". . . . [P]rivate `fast' lands and waters when made navigable by improvements or which could be made navigable are subject to Congressional regulation. Nevertheless while Congress may provide for the improvement and regulation of navigation, and take necessary action to prevent interference or obstruction to navigation, it cannot impose a public navigation servitude upon such a privately constructed waterway without paying a reasonable compensation for the use thereof.
Here then, since Kuapa Pond has been transformed into navigable waters used in commerce, the marina has therefore become subject to regulation by Congress and within admiralty jurisdiction. It does not follow, however, that the United States can, without payment, appropriate those waters for public use and deprive the defendants of their investment or any return on it." [Footnote omitted]
408 F.Supp. 42, 54.
If the public has no right of use on a natural waterway made navigable by private funds under federal law, then a fortiori it has no right of use on an artificial navigable waterway constructed with private funds.
Thus, under state and federal law a canal on private property constructed and maintained with private funds for private purposes is a private canal, the use of which can be restricted by the landowner or his assigns. The injunctions in these cases in favor of the landowner's lessee was proper.
For the above reasons we affirm the judgment of the District Court. All costs are to be assessed against the defendant-appellant.
AFFIRMED.
NOTES
[1] No proof of damages was introduced in the District Court and no mention of damages is made on appeal. We, therefore, will not discuss the issue.
[2] See also, National Audubon Society v. White, 302 So.2d 660 (La.App. 3rd Cir. 1974), writ denied 305 So.2d 542 (La.1975) (No error of law), discussed infra.
[3] § 97. Simple obstruction of a highway of commerce

Simple obstruction of a highway of commerce is the international or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult.
Whoever commits the crime of simple obstruction of a highway of commerce shall be fined not more than two hundred dollars, or imprisoned for not more than six months, or both.
[4] § 403. Obstruction of navigable waters generally; wharves', piers, etc.; excavations and filling in

The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.
[5] United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960); United States v. Twin City Power Company, 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240 (1956); United States v. Willow River Power Company, 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 1101 (1945); United States v. Appalachian Electric Power Company, 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); United States v. Saxton Cove Estates, Inc., 389 F.Supp. 602 (S.D. Fla.1975), affirmed in part, reversed in part, 526 F.2d 1293 (5th Cir. 1976); United States v. Cannon, 363 F.Supp. 1045 (D.Del.1973); United States v. Pot-Nets, Inc., 363 F.Supp. 812 (D.Del. 1973); United States v. Underwood, 344 F.Supp. 486 (M.D.Fla.1972); United States v. 412.715 Acres, 53 F.Supp. 143 (N.D.Cal.1943).