STOULIG, Judge.
Plaintiff, A. L. Melancon, Inc., has appealed a declaratory judgment decreeing that defendant, Dixie Brewing Company, Inc. (Dixie), had legal cause to terminate the exclusive right of plaintiff to distribute beer in parts of Orleans and St. Tammany Parishes.
Appellant first complains that the trial court erred procedurally in rendering judgment beyond the scope of the declaratory relief sought, and, alternatively, plaintiff next urges the factual evidence does not support the judgment.
The scope of the declaratory judgment suit is outlined by C.C.P. arts. 1871 et seq. Under C.C.P. art. 1872, “a person interested under a * * * contract * * * may have determined any question of construction or validity arising under the * * * contract * * The suit may be filed either before or after the breach (C.C.P. art. 1873). The trial court, in addition to making the status determination sought, may grant supplemental relief where necessary and proper under C.C.P. art. 1878. Issues of fact in these cases are to be tried and determined in the same manner as in other civil actions. (C.C.P. art. 1879)
Thus, if the pleadings stipulate the supplementary relief sought, the issue is properly before the court. Plaintiff’s petition not only puts the validity of the contract at issue but it also raises the question of what constitutes a breach. The prayer for judgment asks the court to decree “ * * * that termination of the distributorship would be a violation of the terms of the agreement dated August 11,1959 * *.”
Defendant’s answer sets forth the issues with clarity, namely, (1) Does plaintiff operate the distributorship under a contract?; and (2) if the letter on which plaintiff bases its claim is in fact a contract, has plaintiff’s performance justified its termination?
*1242 At the trial, plaintiffs counsel objected to introduction of any evidence offered to establish unsatisfactory performance on the part of plaintiffs agents. The trial court properly overruled the objection because the pleadings filed by both litigants set forth unsatisfactory performance as an issue.
In appellant’s brief, counsel states that Dixie’s attorney indicated prior to trial that the narrow issue was whether the letter of 1959 was in fact a contract. We note plaintiff’s counsel did not raise this point during the course of the trial, and we have not been referred to any written stipulations that would reflect such an agreement. Our review is limited to evidence contained in the record; therefore, we cannot consider counsel’s statement concerning the limitation of issues. Discon v. Saray, Inc., 262 La. 997, 265 So.2d 765 (1972).
Further, in the interest of judicial economy, it is questionable whether the issue, once raised, could be deleted. Our law does not sanction piecemeal trials. (Cooper v. Cooper, 205 So.2d 98 [La.App. 2d Cir. 1967])
Turning to the merits, the record establishes that Mr. and Mrs. A. L. Melancon began as distributors for Dixie in 1944. At Melancon’s request, Dixie issued a letter dated August 11, 1959, declaring an intent “ * * * to continue its relationship with Mr. and Mrs. Aynaud Melancon in the capacity of distributor of Dixie Beer in Boga-lusa-Slidell, Louisiana area * * In 1966 the corporation, A. L. Melancon, Inc., was formed to assume operation of the distributorship, which A. L. Melancon actively managed until his death in 1971. At that time Huey Fortenberry assumed control of the operations.
The legal effect of the 1959 letter, viewed in the light most favorable to the plaintiff, evidenced a contract for an exclusive distributorship in a given area of Orleans and St. Tammany Parishes. The distributorship vested originally in the individual Melancon and was later transferred to the Melancon corporation, which continued to act. Passage of 12 years from the time of incorporation to the notice of termination suggests Dixie tacitly agreed the distributorship could vest in the corporation. (See C.C. art. 1817) The trial court’s reasons for judgment do not discuss whether a valid contract was in existence between plaintiff and defendant in 1978 because its factual finding that the plaintiff’s performance entitled defendant to cancel whatever agreement, if any, was in existence, made the first issue academic.
In reviewing the evidence, we conclude the factual findings of the trial court are not “clearly wrong.” We did not limit our review of facts to reading of the record simply to ascertain if it revealed a reasonable factual basis for the trial court’s finding. We went one step further and weighed the question as to whether this finding was “clearly wrong.” Arceneaux v. Domingue et al., 365 So.2d 1330 (La.1978).
Briefly stated, the record establishes the defendant’s officials became aware of deficiencies throughout plaintiff’s territory by a survey it conducted in December 1976. The problems included the presence of stale beer[1] on the shelves of retail outlets serviced by plaintiff, the lack of advertising in the store, the failure to procure adequate shelf space, and the failure to furnish all the products available in the Dixie line to the stores in the territory. Not only did Dixie officials advise Fortenberry to correct the deficiencies in his territory more than once,[2] they also offered, assistance which *1243 was never accepted. Finally, after ten months of attempting to have the problems in this distributorship corrected, Dixie terminated the arrangement between it and plaintiff. It was justified.
For the reasons assigned, the judgment appealed from is affirmed at appellant’s cost.

AFFIRMED.

. According to the uncontradicted testimony tendered by defendant, in the industry the shelf life of beer is 90 days from the date stamped on the containers, after which period there is a radical change in its taste. In the September survey defendant found violations in the first six stores it inspected. In other instances it found some of its products were six months old and some more than a year old.

. Defendant conducted several merchandising surveys of the areas serviced by the plaintiff, copies of which were attached to the following letters itemizing the deficiencies found: December 13, 1976; January 20, 1977; June 8, *1243 1977 (at which time plaintiff’s distributorship was placed on 60 days’ probation); July 28, 1977 and September 23, 1977. On October 10, 1977 defendant notified plaintiff by letter that the distributorship was terminated because of its failure to correct the deficiencies repeatedly called to its attention.