## No. 2256

## Second Circuit Appeal

---

## A. C. JACKSON v. T. C. WALTON

---

(March 30, 1925, Opinion and Decree)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Injunction—Par. 1, 14.**

An injunction will be dissolved where the facts show that plaintiff has a fear or apprehension that his land will be injured if water is pumped out of an adjacent bayou to irrigate defendant's land. There is not a reasonable probability that such would be the case unless there is an unusually dry season.

(Code of Practice, Art. 296.)

2. **Louisiana Digest—Injunction—Par. 1, 14.**

In order to obtain an injunction under Code of Practice, Art. 296, there must at least be a reasonable probability that the injury will be done if no injunction is granted.

Appeal from Second Judicial District Court of Louisiana, Parish of Bossier. Hon. Robert Roberts, Jr., Judge.

This is an injunction suit to prevent one from pumping water out of a bayou for irrigation purposes.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

J. F. Phillips, of Shreveport, attorney for plaintiff, appellee.

Dickson & Denny, of Shreveport, attorneys for defendant, appellant.

ODOM, J. Plaintiff owns land bordering on what is known as Hotchkiss Bayou. The land on the opposite side of the bayou is owned by H. T. Smith. The said Smith, by written contract, granted to T. C. Walton, the defendant, the right to pump water from his side of the bayou to the land of defendant for irrigation purposes and to wash a dairy barn on his (Smith's) property. The land owned by defendant (Walton) which was to be irrigated, lies adjacent to the Smith property but does not lie adjacent to the bayou. The distance from the bayou, across Smith's property, to that of defendant is about 300 feet. The stream or bayou is approximately 2000 feet long and 100 feet in width with an average depth of 3 feet, but with holes in the stream 6 feet deep. It is estimated by a civil engineer that the said bayou contains, or contained at the time the statement of facts was signed, about 5,000,000 gallons of water in the main stream and about 1,000,000 gallons in an arm thereof on the Smith tract which is connected with the main stream. There is also a branch or arm of said bayou lying entirely within the limits of plaintiff's land which is dammed off from and does not connect with the main bayou. Whether this is a running stream or not is not made clear. We get the impression that it is not. It is not navigable.

The plaintiff sets up these facts and that the said T. C. Walton:

"Is arranging to pump and transport water from the said bayou and across the land owned by Smith to the estate, or tract of land, owned by him, the said T. C. Walton; and that he, the said Walton, is going to use and utilize the said water to irrigate the land owned by him, none of which joins or abuts upon the said stream."

And, in Paragraph 8:

"Petitioner shows that the action of the said Walton, if he is allowed to pump the water from the said bayou to the estate owned by him, will be a trespass upon the right of your petitioner."

And he alleges that under the laws of this state the said Walton has no right in or to said water, he not being a riparian owner, and that if he pumps said water from said bayou for irrigation purposes petitioner will be damaged.

And on the question of damages he sets out that his land, being located on said bayou, is admirably situated for irrigation, and that he is contemplating a sale of the land and that he has been informed by expert realtors that if the water should be utilized by persons not abutting on said stream that it would damage the selling value of his estate in the full sum of $2500.00. And he further alleges that the said stream has an abundance of fish in it and that he and his family frequently fish there with success, that should the said Walton be allowed to pump water out of the same and the season turn off dry, it would result in the stream being destituted of water, resulting in the fish dying or becoming unfit for use.

Defendant answered, admitting ownership of the property and the location of the stream, and admitted that he has a contract with H. R. Smith under which he is allowed to pump water from the bayou, but especially denies that any damage or injury will result therefrom to petitioner or his land.

The case was tried in the District Court upon an agreed statement of facts found in the record. There was judgment for the plaintiff, enjoining defendant from pumping or in any other manner diverting or getting water out of the bayou named and described; from which judgment defendant has appealed.

## OPINION

The statement of facts found in the record recites that the main stream is approximately 2000 feet long and about 100 feet wide, shows the amount of water it contains, gives its boundaries, etc., and recites:

"The bayou has not within recent years entirely dried up, but has, within the past three years, dried up to such extent that the water stood only in the deep holes. The stream is fairly stocked with fish and plaintiff and his family fish in it, and there is also fishing done on the side belonging to Mr. Smith."

And it also recites that the land owned by defendant does not abut on the stream but that his land drains into it; that defendant had a contract with Smith to put in a pumping plant, as per the contract filed with the statement of facts, and that plaintiff owns land adjoining the bayou suitable for irrigation, and that Red River is about one-fourth of a mile over the levee, which levee is the boundary of plaintiff's land, and that the river contains an abundance of water to irrigate plaintiff's land but that plaintiff does not own the strip of land between the river and the levee.

There is nothing in the statement of facts to indicate that plaintiff intends to irrigate his land at present or at any time in the future, or that he needs the water in the bayou for any other purpose. It is set out that his land is susceptible of irrigation but it is not recited that he needs the water for that purpose at this time. It is shown that the bayou is fairly well stocked with fish and that plaintiff catches and uses them, but it is not shown that the pumping of water from the bayou will kill the fish. It is shown that the bayou has not within recent years gone dry but that it has within the past two or three years gotten so low that the water only stood in the deep holes. There is nothing to show the amount of water which the defendant would probably take from the stream. It is admitted that defendant had a contract to put in a pumping plant, as per the contract attached. That contract provides that Walton, the defendant, may pump water from the bayou for the purpose of irrigating his property and to wash a barn, but there is nothing to show how much land defendant proposes to irrigate or how much water he will use for that purpose or for washing the barn. It is not stated in the statement of facts that defendant proposes to draw such an amount of water from said stream as will kill the fish, or that he will pump the said stream dry; nor is it intimated that his pumping water from the said bayou will have any appreciable effect upon it, except in extremely dry seasons.

This suit was filed on June 9th, and there is nothing to show that the water was low at that time or that it would be needed to sustain the fish, and, as stated, plaintiff does not attempt to show

that he had need of the water in the bayou. So far as even the pleadings or the statement of facts shows, plaintiff has not at this time irrigated his own land with the water from said bayou nor does he contemplate doing so in the near future. He goes no further than to state in his petition that his land is susceptible of irrigation and that he has been informed that if the water should be pumped out of the bayou by outsiders it would cause injury to his land, or rather reduce the sale price thereof $2500.00.

Plaintiff has not shown any actual or impending injury or danger and therefore was not entitled to an injunction. There is no allegation or proof that defendant will pump so much water from the bayou that the fish will die or that he will not have sufficient water for his own needs. The inference from the pleadings and the facts is clear that unless there is a dry season plaintiff has no reason to apprehend danger or injury.

Article 296 of the Code of Practice reads as follows:

"Injunction or prohibition is a mandate obtained from a court by a plaintiff prohibiting one from doing an act which he contends may be injurious to him or impair a right which he claims."

In 22 Cyc., page 758, we find the law stated thus:

"It is not sufficient ground for an injunction that the injurious acts may possibly be committed or that injury may possibly result from the acts sought to be prevented. There must be at least a reasonable probability that the injury will be done if no injunction is granted, and not a mere fear or apprehension."

See: Harrison vs. City, 33 La. Ann. 222.
Roudanez vs. Mayor, 29 La. Ann. 271.
State ex rel. vs. Keiffer, 34 La. Ann. 89.
Bell vs. Riggs, 38 La. Ann. 555.

The injunction will have to be dissolved because there was no actual or impending injury shown.

However, plaintiff's right to renew the action, should necessity for it arise, should be reserved.

For the reasons assigned it is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and avoided and that the injunction be dissolved and set aside, all at the cost of the plaintiff.

It is further ordered that plaintiff's right to renew his action, in case conditions warranting it should arise, be reserved.