302 So.2d 660 (1974)
NATIONAL AUDUBON SOCIETY et al., Plaintiffs-Appellees,
v.
Joseph Doris WHITE, Defendant-Appellant.
No. 4574.
Court of Appeal of Louisiana, Third Circuit.
October 16, 1974.
Rehearing Denied November 20, 1974.
Writ Refused January 10, 1975.
*661 Ned E. Doucet, Jr., Kaplan, for defendant-appellant.
Cooper & Sonnier by Silas B. Cooper, Jr., Abbeville, for plaintiffs-appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
National Audubon Society and Estate of E. A. Mcllhenny instituted this suit against Joseph Doris White, seeking a judgment enjoining, restraining and prohibiting White from trespassing on the "Mcllhenny Canal," in Vermilion Parish, or on any other properties or canals owned by plaintiffs in that vicinity. Judgment was rendered by the trial court in favor of plaintiffs, and defendant appealed.
A similar action, instituted by the same plaintiffs against Eldridge White, was consolidated with the instant suit for trial and appeal. The trial court rendered judgment in favor of plaintiffs in that case, and defendant Eldridge White also appealed. We are rendering a separate judgment in that suit on this date. See National Audubon Society, et al v. Eldridge White, 302 So.2d 668.
The issue presented in these consolidated cases is whether a private land owner can restrict or limit the use of, or prohibit others from using, a navigable canal constructed by him on his own property.
E. A. Mcllhenny, plaintiff's ancestor in title, constructed the "McIlhenny Canal" in 1912, on his own land and at his own expense. *662 The canal is ten or eleven miles long and is located in Vermilion Parish. It runs generally north and south through marshlands, connecting Vermilion Bay on the north with a ridge of highland called "Cheniere Au Tigre," near the coast of the Gulf of Mexico, on the south. The canal has been dredged out and widened since it was originally built, and it is now from 88 to 110 feet wide, and from nine to eleven feet deep. It is navigable and has been vavigable since it was first built in 1912. There were no navigable waters on the land affected by the canal before that waterway was constructed.
Most of the land on which the McIlhenny Canal is located was donated to National Audubon Society in 1924 for use as a wild life refuge. All of the property so donated was designated that year as comprising the "Paul J. Rainey Wild Life Sanctuary," and it has been used continuously since that time as a refuge or sanctuary for the protection of wild life in that area. The remainder of the property on which the McIlhenny Canal is located is owned by the Estate of E. A. McIlhenny.
Joseph Doris White, the defendant in this suit, and his son, Eldridge White, defendant in the companion suit, owned property on and in the area of Cheniere Au Tigre. Both of them have farmed that area and have raised cattle on it. The elder White has used the McIlhenny Canal for 50 years to haul cattle, cotton, vegetables and fruits from the ridge to the market. His son has used the canal for similar purposes for more than 40 years. Both testified that they never obtained permission from plaintiffs or from anyone else to use that waterway.
In 1970 Eldridge White was formally notified in writing by plaintiffs that he would no longer be permitted to use the canal. Thereafter, in 1971 and 1972, both of the defendants, Joseph Doris White and Eldridge White, were notified by plaintiffs that they could no longer use that waterway. The defendants continued to use the canal despite those notices, and these companion suits were instituted on April 14, 1972.
Plaintiffs contend that the canal is a private canal, constructed and maintained by them or their ancestor in title on their own property, and that they have the right to restrict the use of the canal and to prohibit defendants or anyone else from using it. They allege, and their representatives testified, that the defendants previously had been given permission to use the canal because they owned property on or near Cheniere Au Tigre, and plaintiffs felt that they had legitimate business interests which justified the issuance of permits to them. Plaintiffs show, however, that they withdrew the permits and denied them the right to continue to use the canal because Eldridge White was convicted of a game law violation committed near the sanctuary, and because Joseph Doris White had represented to other people that he had the right to grant them permission to use the canal.
Defendants contend, first, that the McIlhenny Canal is a "public canal," and that plaintiffs have no right to restrict or limit the use of it; and second, that the canal is a "navigable waterway," and that plaintiffs thus are prohibited by LSA-R.S. 14:97 from obstructing or performing any act which will render movement thereon more difficult.
The trial judge concluded that the canal "was constructed on private property, with private funds and always maintained as a private waterway, and defendants have no right to use it." He held that LSA-R.S. 14:97 applies only to "highways of commerce and, in this sense, public waterways," that the McIlhenny Canal is not a highway of commerce or a public waterway, and that the cited statute thus does not apply to the canal involved in this case. Judgment was rendered by the trial court in favor of plaintiffs, granting the injunctive relief sought by them.
*663 The evidence shows that for many years the McIlhenny Canal has been traversed by boats and barges. It has been used for transporting passengers, cattle, fruits and vegetables, the U. S. mail, oil field crews and equipment, engineers, coast guard personnel and other purposes. Prior to 1942 from 15 to 18 families lived on Cheniere Au Tigre, and the residents of that island used the canal as a means of ingress and egress to and from their homes. Also, before 1942 a land owner on that ridge operated a hotel there, and the canal was used to transport patrons to and from the hotel. There were a few farmers on the ridge and they used the canal to transport their cattle and produce to and from the market. Some drilling in search of oil was conducted in that area, and boats and barges transporting oil field supplies, drilling rigs and personnel used the canal. Plaintiffs contend that everyone who has used the canal has done so only after obtaining permission from plaintiffs to use it. They claim that their wardens and other employees have maintained careful watch over the canal and have prevented anyone from using it without permission. Defendants contend that no such permits were ever granted.
There are a number of signs on and along the canal indicating that it is a privately owned waterway. At the north end of the canal, where is connects with Vermilion Bay, there is a sign, approximately five by six feet in size, which reads, "Paul J. Rainey Wild Life Sanctuary, Private Canal of the National Audubon Society, Use by Written Consent Only." About a quarter of a mile south of that sign, there is another one, about the same size, located on the banks of the canal in such a position that boatmen in the canal can easily read it, which reads, "Paul J. Rainey Wild Life Sanctuary, Owned by the National Audubon Society, Trapping, Hunting or Trespassing on this Property is Prohibited by Law." The headquarters of the Paul J. Rainey Wild Life Sanctuary is located on the bank of the canal a short distance south of the last mentioned sign, and at or near that headquarters there is a third large sign which states, "Private Property, National Audubon Society, Please go Slow, Headquarters of the Paul J. Rainey Wild Life Sanctuary." Several other signs are located along the canal, about every quarter of a mile, reading "Paul J. Rainey National Wild Life Refuge. No Trespassing."
The evidence leaves it uncertain as to when the above mentioned signs were erected. The defendant in this suit testified that he has never seen any of the signs at any time, although he has traveled on the canal for fifty years. His son, the defendant in the companion case, concedes that he has seen the large sign at the entrance of the canal and several of the smaller ones along it for many years. We interpret his testimony to be that the signs have been there for at least ten years. Other witnesses testified that most of the signs, including some of the large ones, have been up for at least 28 years. We feel certain that the signs were not erected before the property became a wild life refuge in 1924, but we believe that most of them have been up at least 28 years. Defendant argues that they were erected "of late," apparently suggesting that plaintiffs only recently decided to treat the canal as being a private waterway. We do not feel that the evidence will support a conclusion to that effect.
Plaintiffs contend that they have regulated, restricted and controlled the use of the canal since it was built in 1912, and that they have allowed access to it only by oral or written permission. They argue that a wild life sanctuary cannot be operated successfully if the general public is permitted to use the canal, and that for that reason they have constantly limited the use of it to persons who they felt had legitimate business interests which justified the issuance of permits to them.
Plaintiffs filed in evidence a number of "grazing contracts" and other written agreements, ranging in dates from 1925 *664 until 1972, and under the terms of each plaintiffs granted permission for the other party to use the canal. Each grazing contract provided that "as part of this grazing contract .... (the lessees).... are given the free right to use the McIlhenny Canals connecting Vermilion Bay with Belle Isle for the transporting of his cattle and the necessary trips for the care of his cattle." In 1960 plaintiffs issued a written permit authorizing Sharp Gulf Drilling Company to use the McIlhenny Canal for a consideration of $15.00 per day while drilling operations were being conducted by Sharp on Audubon Society property, and the permit states "It is understood that this letter does not constitute permission to use our canal beyond the period of drilling operations...." A similar permit was granted to John W. Mecom Oil Company in 1961, for a consideration of $15.00 per day. In that permit the Mecom Company was authorized to widen the canal, and to block a part of it while doing so. Another permit to use the canal was granted to Kilroy Drilling & Production Company in 1963 for a consideration of $15.00 per day. Other similar permits were granted to Pan American Petroleum Corporation in 1964, to Abbeville Harbor & Terminal District in 1966, and to Consolidated Gas Supply Corporation in 1969. In 1972 plaintiffs granted a permit to Roy Young, Inc., for the permittee to use the canal for a period of less than one month for the transporting of workers, for a consideration of $100.00. In 1925 E. A. McIlhenny granted a special permit to R. S. Segrera, one of the land owners on Cheniere Au Tigre, to use the canal as a part of the consideration for the exchange of some land. A special permit was granted by plaintiff Audubon to the Department of the Army, Corps of Engineers, in 1971, authorizing the permittee to use the canal for four months to "test boat mounted depth measuring equipment."
The evidence shows that a staff of about 30 persons are employed by the Audubon Society, that some of them are wardens, and that the superintendents, managers and wardens have always been required to patrol the canal and to prevent any unauthorized people from using it. The superintendent of the wild life sanctuary testified that it was his understanding that certain people "with cattle leases and oil companies" had been granted permission to use the canal, that the wardens and guards knew them by sight, and that those persons were not stopped from using it unless and until plaintiffs revoked that permission. We are convinced that plaintiffs have consistently endeavored to regulate the use of the canal, and that they have never done anything which could be interpreted as a tacit dedication of the canal for unrestricted public use.
There is a natural tide in the canal which is a continuation of the Gulf tide. The tide is about four hours later than the Gulf tide, however, and it is diminished in force due to the fact that it reaches the canal only by coming through Southwest Pass into Vermilion Bay, and then from that bay into the north end of the McIlhenny Canal, where that canal joins Vermilion Bay.
The cost of maintaining, dredging and widening the canal has been paid solely by plaintiffs, except in the following instances. First, the evidence shows that defendants made some contributions to the Audubon Society to assist in maintaining the canal. Second, in 1957 Hurricane Audrey caused some debris to be deposited in a part of the canal, and the Army Corps of Engineers cleaned out that debris. Third, one or more oil companies were given permission to widen the canal, in consideration for a permit to use it in connection with their drilling operations.
We find that public funds have not been used for the upkeep or maintenance of the canal. With reference to the contributions made by defendant White, the trial judge held, correctly we think, that they were "contributions to the Society for use at the sanctuary and/or payment for cattle grazing rights." In any event, the contributions *665 made by defendants were not public funds, and there was no contractual relationship between plaintiffs and defendants which gave the latter the right to use the canal. We do not feel that the removal of debris from the canal by the Army Corps of Engineers following a disaster such as Hurricane Audrey constituted the use of public funds for the maintenance of the canal. The widening of the canal by oil companies was done by agreement, in consideration for the use of that waterway, and the amounts spent for that purpose did not constitute the expenditure of public funds.
The first question to be answered is whether the McIlhenny Canal is a public canal, that is, whether it has become a part of the public domain, thus precluding plaintiffs from regulating traffic on it or preventing defendants from using it at all.
No property or right-of-way was ever expropriated for canal purposes along the route of the McIlhenny Canal. There has been no formal dedication of the canal for public use, and we find that there has been no tacit or implied dedication of it. We do not question defendants' statements that formal permits to use the canal were never issued to them or to other landowners near Cheniere Au Tigre, but we believe that plaintiffs, and their agents and representatives, thought that permission previously had been granted to those landowners and that for that reason plaintiffs did not stop them from using the canal. In any event, the evidence does not show any act of the plaintiffs or their ancestor in title which could justify an inference that plaintiffs intended to dedicate the canal for public use. Their actions have been consistent with the position they take here that the canal is a privately owned waterway.
In our Civil Code, things are classified as being either "common or public." LSA-C.C. art. 449. Running water, the sea and its shores, are said to be common things. LSA-C.C. art. 450. Navigable rivers, highways, and the beds of rivers, as long as they are covered with water, are classified as being public things. LSA-C.C. art. 453. We do not consider the McIlhenny Canal to be either a common or a public thing. The canal was constructed with private funds on private property. It cannot be said that the ownership of the canal "belongs to nobody in particular," as provided in LSA-C.C. art. 450, or that title to the canal became "vested in a whole nation," simply because it contained running water or because it was dug deep enough to become navigable.
We believe that a canal built entirely on private property, with private funds and for private purposes, is a private thing, for the same reasons that a road built on private property for private purposes is a privately owned road. See Vol. 2, Yiannopoulos, Louisiana Civil Law Treatise, Sec. 31.5. We concede that if a navigable canal should be constructed with public funds, or if it should be located on a publicly owned right-of-way or on public property, then it at least arguably is a public canal, and the owner of adjacent property would have no right to regulate or prevent its use by anyone else. The evidence in this case shows, however, that the McIlhenny Canal was not constructed with public funds, and it was not built on a publicly owned right-of-way or on public property.
The issue before us here was presented to our Supreme Court many years ago in Harvey v. Potter, 19 La.Ann. 264 (1867). In that case plaintiffs sued for tolls and charges which they contended were owed to them by defendant for the use of a canal which they had constructed on their own land and had maintained at their own expense. The question presented, as stated by the court, was: "Has the proprietor of a tract of land the right to excavate, entirely within his own boundaries, and exclusively at his own expense, a canal for the purposes of navigation, and to require payment for its use by all who choose to avail themselves of its facilities?" The court held that the canal had never been dedicated for public use, it had never been expropriated, and it had never been constituted *666 a public highway. Under those circumstances it affirmed the judgment of the trial court which granted to plaintiffs the tolls and charges which they claimed. The court said:
"It is not easy to perceive how, in such a case, the public become seized of the right to the gratuitous use of advantages afforded by individual labor and enterprise."
* * * * * *
"If he constructs works useful for the public upon his private property, and the public think proper to enjoy the benefits of these works, equity would certainly require that for the benefit received, compensation should be returned. Private property shall not be taken for public uses, without ample remuneration first made to the owner."
The case of Ilhenny v. Broussard, 172 La. 895, 135 So. 669 (1931), related to the same canal which is at issue in the instant suit. In that case E. A. McIlhenny, plaintiffs' ancestor in title, sued defendant Broussard to enjoin him from using that canal. The principle defense urged by the defendant was that the McIlhenny Canal diverted so much water from the natural channel that the latter was no longer navigable, and that defendant thus had a right to use the plaintiff's canal (even though a private one) because of having been deprived of the use of the natural channel. The court held that regardless of whether the McIlhenny Canal diverted waters from another channel, as contended by defendant, defendant nevertheless did not have the right to use plaintiff's private canal. The court observed that the Congress of the United States has plenary powers over the navigable waters of the nation, and that if plaintiff has diverted water of a navigable stream to the extent that it renders the stream nonnavigable, the Secretary of War is more capable of dealing with that matter than are the courts. It concluded that "On the whole, therefore, we are of opinion that defendant has not the right to use plaintiff's canal under any circumstances, and that if he has any just cause of complaint against plaintiff the proper course to pursue is to apply for relief to the Secretary of War."
It is significant, we think, that E. A. McIlhenny, plaintiffs' ancestor in title, was contending that the canal was a privately owned waterway at least as early as 1930, when Ilhenny v. Broussard, supra, was tried, and that plaintiffs have consistently maintained that position since that time. It also is significant that the court held in that case that the McIlhenny Canal was a private canal, as plaintiffs contend here. We recognize that the issue being determined here was not squarely presented to the court in the earlier case, because no claim was ever made in that case that the canal was public. All parties apparently conceded that the canal was a private one. But, the fact that all parties conceded and the court held that the McIlhenny Canal was a private thing is at least persuasive that the judgment appealed from here is correct.
In our opinion the decisions rendered in the Harvey and Ilhenny cases, supra, are controlling here.
We find that the McIlhenny Canal is a privately owned canal, constructed and maintained by plaintiffs or their ancestors in title on their own lands. The canal was not constructed and it has not been maintained with public funds. There has been no dedication of the canal for public use and there has been no contract or agree ment giving defendants the right to use it. The property affected by the canal has never been expropriated by a public body. Our conclusion is that plaintiffs have the right to regulate and control the use of that canal, including the right to prohibit defendants from using it.
Defendants argue, alternatively, that even if the McIlhenny Canal is a privately owned waterway, plaintiffs nevertheless are prohibited by LSA-R.S. 14:97 from performing any act which will render movement on the canal more difficult, and that they thus have no legal right to prevent defendants from using that waterway.
*667 Defendants rely largely on the cases of D'Albora v. Garcia, 144 So.2d 911 (La.App. 4 Cir. 1962); and Discon v. Saray, Inc., 262 La. 997, 265 So.2d 765 (1972).
LSA-R.S. 14:97 provides:
"Simple obstruction of a highway of commerce is the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult.
"Whoever commits the crime of simple obstruction of a highway of commerce shall be fined not more than two hundred dollars, or imprisoned for not more than six months, or both."
In D'Albora plaintiff sued to enjoin the defendant from obstructing or impeding the free use of a canal through which plaintiff and others had access from their properties to Lake Pontchartrain. The canal had been dug by the State of Louisiana to obtain dirt for constructing a highway, and the canal ran along the completed highway. The canal had been in existence for more than 30 years, during which time it had been freely used by those whose properties fronted on it, as well as by the public in general. The canal thus was constructed with public funds, and it appears to have been a part of the public domain. The Court of Appeal, Fourth Circuit, affirmed the judgment of the trial court prohibiting defendant from interfering with plaintiff's use of the canal, and it based its decision on the ground that the canal was a "navigable waterway," and that LSA-R.S. 14:97 thus prohibited defendant from performing any act which would render movement thereon more difficult.
In Discon, plaintiffs sought to enjoin defendant from impeding navigation in a canal which bordered on plaintiffs' properties and provided a means of ingress and egress for their watercraft in Lake Pontchartrain. Our Supreme Court concluded that plaintiffs were entitled to that injunctive relief under LSA-R.S. 14:97. The court held that "the canal passageway for watercraft is not merely a servitude but is a dedicated right-of-way for such use," since it had been shown on a plat of the subdivision which included the canal. The court stated that regardless of whether there had been a "public dedication" of the canal, or merely a dedication "for the benefit of the subdivision's lot owners," neither the defendant nor any of the other adjacent property owners could reroute it or impede its use.
We distinguish the D'Albora and Discon cases from the instant suit, because in each of those cases the canal was either a part of the public domain or it had been dedicated for use by the owners of property in the subdivision in which the canal was located.
We have concluded that LSA-R.S. 14:97 does not apply to a privately owned canal, even though it may be navigable. We agree with the views expressed by Professor A. N. Yiannopoulos, in discussing the case of Discon v. Saray, Inc., supra, where he stated:
"The majority opinion necessarily rests on the assumption that the canal in question was burdened with a servitude of public use. Indeed, it would be inconceivable to apply article 97 of the Criminal Code to a strictly private waterway. The majority proceeded on the idea that this article was applicable because the canal was navigable, and, therefore, was burdened with a servitude of public use; in the alternative, that the canal was burdened with a servitude of public use by virtue of dedication. No one, however, should be prepared to accept the proposition that all navigable waterways in Louisiana are subject to public use merely by virtue of the fact they are navigable. A privately owned canal, though navigable in fact, may not be subject to public use, for the same reasons that a private road, though used by commercial traffic, may not be subject to public use. Thus, the disposition of the case would be correct only if the canal *668 in question had been dedicated to public use." (Emphasis added).
In our opinion, the trial court correctly held that the McIlhenny Canal is a private canal, that LSA-R.S. 14:97 does not apply to a privately owned waterway even though it is navigable, and that plaintiffs thus have the right to regulate the use of that canal and to prohibit defendants from using it.
Defendants suggest in a written brief filed by them that they have no means of ingress or egress to and from their property at Cheniere Au Tigre except by means of this canal. No issue is presented here, however, as to whether they can claim a right of passage in the estate of their neighbors under LSA-C.C. art. 699, or under any other law, and we thus make no determination of any such issue.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.