643 So.2d 415 (1994)
PEOPLE FOR OPEN WATERS, INC., Plaintiff-Appellant,
v.
ESTATE OF J.G. GRAY and Sheriff Wayne McElveen, Defendants-Appellees.
No. 94-301.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
*416 Glen D. Vamvoras, Stacey Williams Moreau, Lake Charles, for People For Open Waters, Inc.
Jerry G. Jones, Cameron, for Estate of J.G. Gray et al.
Before LABORDE, KNOLL and THIBODEAUX, JJ.
KNOLL, Judge.
This appeal involves the public's right of access to a canal constructed on private property. The trial court dismissed the plaintiff's suit to enjoin the defendants from preventing its use of the waterway. Plaintiff brings this appeal. We affirm.

FACTS
The Gray Canal is located in Calcasieu Parish, near Vinton, Louisiana. This canal is approximately 50 feet wide and 5 to 9 feet deep, running in a southerly direction from Interstate 10 to the Vinton Drainage Canal, a distance of 5 or 6 miles. It is believed that Gray Canal was constructed sometime after the end of World War I, in the early 1920's. The record indicates at that time the Gray family owned the land on which the disputed part of the canal was built. The plaintiff alleges public funds were used in constructing or maintaining the canal. However, while the plaintiff did show dredging was done in the area, the record does not indicate that any of this work was actually done on Gray property.
Gray Canal has been used for many years by both commercial and sport fishermen. In March of 1993, the Gray Estate posted the canal with no-trespassing signs in response to problems with litter, bank erosion, illegal hunting, and theft. People for Open Waters, Inc. then brought this suit to enjoin the Gray Estate and the Calcasieu Sheriff from denying the plaintiff and public access to Gray Canal. After trial on the preliminary injunction, the trial court dismissed the plaintiff's case. The plaintiff appeals, asserting 3 assignments of error.[1]

*417 DIVERSION OF NAVIGABLE WATERWAY
The plaintiff first contends the trial court erred by not finding that the construction of the Gray Canal diverted a pre-existing natural, navigable waterway, thereby giving the public a right to use Gray Canal. Plaintiff relies on Vermilion Corp. v. Vaughn, 356 So.2d 551 (La.App. 3 Cir.1978), affirmed in part, vacated in part, 444 U.S. 206, 100 S.Ct. 399, 62 L.Ed.2d 365 (1979), remanded to appellate court, 387 So.2d 698 (La.App. 3 Cir.1980), reversed and remanded to trial court, 397 So.2d 490 (La.1981). In Vermilion Corp., the United States Supreme Court indicated that where the construction of a private waterway destroys or diverts a natural, navigable waterway, then this fact could constitute a defense under federal law to an action to enjoin the public from using the private waterway. Id.
At trial, Lonnie Glen Harper, a licensed civil engineer and land surveyor, testified about the topographical conditions in the area around Gray Canal. Mr. Harper had studied the field notes from the 1880 U.S. governmental survey done of the area. As expected, the field notes made no mention of a water body corresponding to Gray Canal. Further, the only significant stream mentioned in the field notes was a "Black Bayou," which apparently no longer exists. Mr. Harper opined from the 1880 survey map and field notes, that Black Bayou would not have intersected Gray Canal and that the canal could not therefore be responsible for its disappearance. The 1880 field notes did mention numerous sloughs or streamlets that varied from 10 to 50 feet in width and Gray Canal probably did cross the path of some of these sloughs when it was built. However, there is no indication of the depth of these sloughs or whether they carried water year round, much less whether they were in fact navigable. As the trial court noted:
"The problem in this case is that there has not been a clear showing that it was a public stream or, as the engineer called it, flue [slough], that was obstructed, if in fact one was. In fact, the testimony of Mr. Harper was that D-2 [1880 survey] did show a flue that could have been anywhere from 10 to 50 feet, and it's not there now. But we don't know if it was a public body of water or private body of water. It seems the testimony suggested it was more than likely on private property. There's no testimony it was a public body of water or that it was even navigable, so I don't think that Vermillion [Vermilion] Corporation. v. Vaughn case would apply in this case...."
We hold the trial court was correct in finding that the plaintiff failed to prove a navigable waterway was diverted by Gray Canal; therefore, the plaintiff did not have a defense to the injunction under Vermilion Corp.

PUBLIC RIGHTS ARISING OUT OF NAVIGABILITY
The plaintiff's second assignment of error is twofold. First, it argues that there is a public policy against navigable waterways being privately owned, citing LSA-R.S. 9:1107. Secondly, the plaintiff argues that running waters are a public thing under LSA-C.C. Art. 450, and that a public thing must be susceptible to public use under LSA-C.C. Art. 452. However, for reasons that follow, we find that both of these contentions are without merit.
LSA-R.S. 9:1107 is not applicable to the case sub judice. Before the passage of this statute, there was some question as to whether land grant patents that included a navigable waterway also granted the patent holder private ownership of the waterway. R.S. 9:1107 was simply intended to clarify that no land patent could transfer a navigable waterway to a private or public body, rather ownership of such waters must remain with the state. See Yiannopoulos, 2 Louisiana Civil Law Treatise: Property, § 67, (3 Ed.1991). Thus, R.S. 9:1107 has no application where a private person creates a navigable waterway on his own property. There is little doubt that such a waterway is susceptible to private ownership.
"A canal built entirely on private property for private purposes is a private thing, for the same reasons that a road built on private property for private purposes is a *418 private thing. The fact that such a canal contains navigable waters within its banks is not sufficient to vest ownership of its bed in the state or to subject the waterway to public use." Yiannopoulos, supra, § 79. (footnote omitted).
See also National Audubon Society v. White, 302 So.2d 660 (La.App. 3 Cir.1974), writ denied, 305 So.2d 542 (La.1975), for the same result in a very similar fact pattern.
By the same token, we find no validity to the assumption that because the water in the canal is a public thing, the public must have a right to use the canal. The obligations arising from water being a public thing require an owner, through whose estate running waters pass, to allow the water to leave his estate through its natural channel and not to unduly diminish its flow. LSA-C.C. Art. 658 and comments thereto. However, this does not mandate that the landowner allow public access to the waterway. As Professor Yiannopoulos explains:
"Landowners and members of the general public thus have the right to use running water for their needs, if they have access to it. Neither landowners nor members of the general public have the right to cross private lands in order to avail themselves of running water. Such a right may only be established by agreement, destination of the owner, or prescription." Yiannopoulos, supra. (footnote omitted).
This Court, in National Audubon Society, reached the same conclusion in deciding the canal in question was not subject to public use:
"Running water, the sea and its shores, are said to be common things. LSA-C.C. art. 450. Navigable rivers, highways, and the beds of rivers, as long as they are covered with water, are classified as being public things. LSA-C.C. art. 453. We do not consider the McIlhenny Canal to be either a common or a public thing. The canal was constructed with private funds on private property. It cannot be said that the ownership of the canal `belongs to nobody in particular,' as provided in LSA-C.C. art. 450, or that title to the canal became `vested in a whole nation,' simply because it contained running water or because it was dug deep enough to become navigable." Id. at 665.
It is well established that no public rights arose merely from Gray Canal being navigable or from water flowing through its channel.

ACQUISITION OF APPARENT SERVITUDE
The plaintiff's final contention is that the public acquired an apparent servitude by use of the canal in excess of 30 years. LSA-C.C. Arts. 740 and 742.
Prior to the 1977 revision of Title IV, Book II of the Civil Code (Predial Servitudes), apparent servitudes were divided into 2 classifications, continuous and discontinuous, with the latter not being susceptible to acquisitive prescription. As the plaintiff correctly asserts, this distinction was suppressed in the 1977 revision, and now all apparent servitudes are subject to acquisitive prescription. However, as the comments to Article 740 clearly explain, prescription as to formerly discontinuous servitudes begins running only from the effective date of the revised Article.
"The provision is not retroactive. Thus, the quasi-possession of a servitude that would be discontinuous under the prior law does not give rise to prescriptive rights except from the effective date of the new legislation." Comment (a), Art. 740.
See also Greene v. Greene, 373 So.2d 756 (La.App. 3 Cir.1979), writ denied, 377 So.2d 118 (La.1979) and Daniel v. Dept. of Transp. & Development, 396 So.2d 967 (La.App. 1 Cir.1981), writ denied, 400 So.2d 1385 (La. 1981). Since 30 years have not passed since the 1977 revision, the plaintiff has not acquired a servitude of passage through Gray Canal.

CONCLUSION
For the above and foregoing reasons, we find the plaintiff's suit for injunction was properly dismissed. The judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] While plaintiff makes 4 assignments of error, one of these was not briefed and, therefore, considered abandoned on appeal. Uniform Rules Courts of Appeal 2-12.4.