Dear Senator Shaw,
You have requested an opinion of this Office regarding the withdrawal of water from Alligator Bayou in Red River Parish. You stated that your legal concern on this issue is whether permission to drain the water should be procured from both of the landowners adjacent (i.e., the riparian owners) to this stream and whether both landowners must be compensated for the water drained. You then specifically asked: (1) who has the authority to issue permits to drain a body of water; and (2) whether the State has any recourse against a company for illegally removing the water?
 FACTS
Your opinion request stems from an e-mail from a constituent with regard to Alligator Bayou in Red River Parish. This constituent, a landowner on one side of the bayou, witnessed the withdrawal of nearly all of the running water from the bayou via a pump on July 3, 2010. This e-mail explained that Alligator Bayou separates two parcels of land owned by two different individuals, and that this bayou has not only acted as a physical barrier between the two owners, separating their livestock, but has also consistently supplied water for the livestock of your constituents.
 ISSUES
In answering your questions and addressing your legal concerns, it is beneficial to divide the issues into two separate categories: the rights of private landowners and the *Page 2 
rights of the State of Louisiana. Accordingly, the substance of this opinion is organized as follows:
Rights of Private Landowners
If a body of water is shared by two landowners:
(1) Should permission to drain the water be procured from both owners?
(2) Should both landowners be compensated for the water drained?
Rights of the State of Louisiana
(1) Who has the authority to issue permits for the draining of a body of water?
(2) If the company removing the water acted of its own accord, without the State's permission, what recourse does the State have?
 LAW AND ARGUMENT I. Private Landowners
Louisiana law states that "[t]he owner of an estate bordering on running water may use it as it runs for the purpose of watering his estate or for other purposes."[1] The law also states that "[t]he owner of an estate through which water runs . . . may make use of it while it runs over his lands. He cannot stop it or give it another direction and is bound to return it to its ordinary channel where it leaves his estate."[2] Accordingly, running water is not allowed to be taken out of a channel in a volume that would impair the rights of any riparian owners.
While the owners of estates bordering running water may use the water as provided above, water that is running in a water body, whether navigable or not, is a public thing subject to public use.[3] As this Office has noted on several occasions, running water is a public thing of value that belongs to the people of the State of Louisiana, which will be discussed in more detail below.[4]
In answering your first question of whether permission to drain the water must be procured from both owners, we must first consider what actual rights the owners of the *Page 3 
property adjacent to the bayou hold. In considering the law provided above, it is clear that a riparian owner may access and "use" the running water for his estate, but the water remains a public thing owned by the State under Louisiana law.
In Buckskin Hunting Club v. Bayard, the Third Circuit Court of Appeal explained that:
[t]he obligations arising from water being a public thing requires the owner through whose estate running waters pass to allow water to leave his estate through its natural channel and not to unduly diminish its flow; however, this does not mandate that landowner allow public access to waterway.[5]
In Buckskin Hunting Club and People For Open Waters,Inc., the primary issue was public access to private canals that held running water. The Third Circuit has consistently held that "[n]o public rights to use of a canal located on private property arise from the fact that water flows through [the] channel."[6]
In your opinion request, the ownership of the running water itself is at issue, not access to the stream. Louisiana law states that running water is a public thing owned by the State, [7]
therefore the riparian owners only have the right to physically access the water for the purposes contemplated by La.R.S. 9:1101[8] and to use the water for reasonable agricultural, aquacultural, and other riparian uses.[9] *Page 4 
However, based upon your request, it is apparent that something more than the typical riparian, agricultural, or aquacultural use has occurred in this matter. As noted in previous opinions and in the Buckskin Hunting Club case, riparian owners are required to "not unduly diminish" the flow of waters running across their estate through their own uses.[10] In this instance, the complete draining of the water from Alligator Bayou seems to violate this general tenet of riparian rights.
Accordingly, because the State owns the running water, your second question of whether both landowners should be compensated for the water drained from Alligator Bayou is an important one. However, because the water, itself, is owned by the State, this question does not involve compensation for the withdrawal of the water, but rather for any damages caused to the riparian landowners as a result of the withdrawal of the water by one landowner and the inability of the other riparian landowners to use and/or enjoy the water.[11] The calculation of any damages of this sort and a proper determination of what or who caused such injuries constitutes a private dispute upon which we cannot opine. In addition, such factual determinations are properly within the province of the court system.[12]
 II. State of Louisiana
As the law provided above explains, and as this Office has consistently opined, "there is no per se private ownership of [the] water under Louisiana law. Thus, the State of Louisiana owns the water in its capacity as a public person and holds it in trust for the *Page 5 
people of the State."[13] Because running waters are public things and are a natural resource for which the State is responsible, these waters must be "protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people" as required by the Louisiana Constitution.[14]
In addition, because running water is a State-owned resource and also a thing of value, La.Const. Art. VII § 14 applies. La.Const. Art. VII § 14 states, in pertinent part, as follows:
(A) Prohibited Uses. Except as otherwise provided by this constitution, . . . property, or things of value of the state or any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
 ***
(C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
The Louisiana Legislature recently enacted Act 955 during the 2010 Regular Session to address the precise issue of the proper mechanism for the sale of running surface waters.[15]
This law implements a procedure to allow the Department of Natural Resources ("DNR") to enter into cooperative endeavor agreements for the withdrawal of running surface water from bodies of water in Louisiana. This Act provides, in pertinent part:
§ 961(C). Unless otherwise provided by law, the secretary [of the Department of Natural Resources] is authorized to enter into any cooperative endeavor agreement to withdraw running surface water, provided that any such agreement complies with the prohibition against gratuitous donation of state property by ensuring that the state receives *Page 6 
fair market value for any water removed, and the substance of the agreement is contained within a written cooperative endeavor agreement as provided for in Article VII, Section 14 of the Constitution of Louisiana.[16]
A. Question 1 — Who has the authority to issue permits for thedraining of a body of water?
Act 955 of 2010 expressly provides the Secretary of DNR with the ability to enter into cooperative endeavor agreements with any person or entity seeking to withdraw running surface water. Act 955, specifically states, in pertinent part, that:
a person or entity may enter into a cooperative endeavor agreement to withdraw running surface water as described in this Chapter. The cooperative endeavor agreement shall prohibit the resale of withdrawn running surface water for a price greater than provided for in the agreement; however, a person or entity may receive compensation for the transportation, manufacturing, or processing of withdrawn running surface water. Unless otherwise provided by law, all cooperative endeavor agreements to withdraw running surface water, and any assignment of such agreement, shall be approved by the secretary as provided in this Chapter. No provision contained in this Chapter should be construed as a requirement for any person or entity to enter into any cooperative endeavor agreement to withdraw running surface water. This Chapter shall have no effect on the rights provided for in Civil Code Articles 657 and 658 or any rights held by riparian owners in accordance with the laws of this state.
It should, however, be noted that, while Act 955 allows DNR to enter into these cooperative endeavor agreements for the withdrawal of surface water for the entire State, it also requires that any "agency or subdivision of the state otherwise authorized to enter into a cooperative endeavor agreement to withdraw running surface water" shall only do so if "said agreement is in writing, provides for fair market value to the state, is in the public interest, and is contained on an [sic] uniform form developed and prescribed by the State Mineral and Energy Board and approved by the attorney general."[17] This oversight granted to DNR allows it to enter into cooperative endeavor agreements with private entities as well as political subdivisions. Act 955 does not *Page 7 
interfere with the rights of any political subdivisions of the State and their respective ability to sell running water (if such legal authority exists), but provides a uniform procedure through which the State, through DNR, can ensure that any conveyances of running water are: (1) legal; and (2) do not unduly affect the citizens of Louisiana.[18]
B. Question 2 — If the company removing the water acted of itsown accord without the State's permission, what recourse does theState have?
It is our opinion that the State may seek either recompense for an unauthorized use of water or injunctive relief to stop an ongoing unauthorized use of water. Any such action would necessarily begin with a determination by DNR that an unauthorized use has occurred. The reason for this is that DNR is the agency charged with managing the State's natural resources, including its running waters by virtue of La.R.S. 36:351 and because it is the permitting agency identified by Act 955. Upon a determination that such an unauthorized use has occurred, either the local district attorney or the AG has the authority to pursue criminal and/or civil actions against the violator.
Act 955 does not provide for or contain any specific penal provisions or other specific remedies for a violation of the law.[19] Thus, it is our opinion that other, more general, legal provisions would be available for the prosecution of violations of Act 955. We here undertake a brief review of a few of those provisions.[20]
Civil Action
La.C.C. Art. 2315, et seq., is Louisiana's tort law. This law requires that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[21] If the unlawful withdrawal of running water will cause damage to the State *Page 8 
a civil action for damages against the party withdrawing the water should be available. In addition to this basic civil remedy, La.C.C. Art. 2298 also provides for recovery for enrichment without cause. La.C.C. Art. 2298 states that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person" and provides a subsidiary civil remedy where the law affords no other. Both of these legal provisions provide possible remedies for the unauthorized use of running surface water.
Injunctive Relief
Louisiana law also provides for injunctive relief, which may be used to prevent or stop the unauthorized withdrawal of running water. The Code of Civil Procedure states that "[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant."[22] It further states that "[d]uring the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both."[23] This legal avenue is available in order to stop ongoing unauthorized uses of running water.
Criminal Action
Because running water is a thing of value that belongs to the State, withdrawing it from a body of water without the permission of the State is, by definition, "theft." La.R.S. 14:67(A) states that:
[t]heft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Thus, an appropriate law enforcement agency could arrest an individual who is withdrawing running water without authorization, and charge him with theft. Depending on the amount and value of the water being stolen, penalties for theft vary from a maximum fine of one to three thousand dollars in addition to or in combination with *Page 9 
possible prison time.[24] It is within the discretion of prosecutor as to whom, when, and how such charges may be brought or prosecuted.[25]
Relevant Case Law
While Buckskin Hunting Club v. Bayard, cited above, dealt with this issue indirectly, the only other relevant jurisprudential precedent is Jackson v. Walton,2 La.App. 53 (La. App. 2 Cir. 1925). This case involved Hotchkiss Bayou in Bossier Parish. In Jackson, the plaintiff owned land on one side of the bayou and challenged a written contract between riparian landowner on the opposite side and another nearby landowner for the right to pump water from that side of the bayou to the nearby landowner's property for primarily irrigation purposes.
The Second Circuit Court of Appeal reasoned that because there were no stated facts indicating the plaintiff's need or intended use of the water in the bayou at present or any time in the future, that injunctive relief should not be granted because the plaintiff showed no actual or impending damages. The Court went on to state that:
[t]here is no allegation or proof that defendant will pump so much water from the bayou that the fish will die or that he will not have sufficient water for his own needs. The inference from the pleadings and the facts is clear that unless there is a dry season plaintiff has no reason to apprehend danger or injury.[26]
Based upon the above quotation, it is apparent that the courts have recognized that one riparian owner's use of running water can detrimentally impact the rights of another riparian owner. However, such matters of damages between private parties are best resolved by the courts and speculation as to the outcome of such matters is not appropriate herein. With that said, the reasoning relied upon inJackson will clearly be relevant in any future cases on the issue of civil liability and injunctive relief. However, the issues of compensating the State for the unauthorized withdrawal of running are currently unlitigated. *Page 10 
 CONCLUSION
Running water is a public thing owned by the State, pursuant to La.C.C. Art 450 and La.R.S. 9:1101. Act 955 of 2010 sets forth the procedure to be used by the State and any of its political subdivisions when entering into an agreement to allow the withdrawal of running water, authorizes the Department of Natural Resources to enter such agreements, the Act further allows any other State agencies or political subdivisions who may also have the authority to enter into these agreements, but only if done on the form developed and prescribed by the State Mineral and Energy Board and approved by the attorney general. Landowners owning property adjacent to non-navigable streams only have the right to use running water for their estate as provided in La.C.C. Arts. 657—658, and may only give permission and/or be compensated for the use of their property to access the running water and not for the water itself.[27]
This Office remains of the opinion that running water is a State-owned resource that has value and that must be purchased pursuant to the laws governing the sale of State property. If an entity is unlawfully withdrawing running water from a body of water without the State's permission, the Attorney General or appropriate District Attorney may pursue all civil, criminal, and injunctive remedies available under State law against the person or parties responsible for the illegal withdrawal of running water.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
Yours very truly,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:________________________ DANIEL D, HENRY JR. Assistant Attorney General
JDC/DDH/jv cc: Robert D.Harper Dept. of Natural Resources
[1] La.C.C. Art. 657.
[2] La.C.C. Art. 658.
[3] La. Atty. Gen. Ops. 09-0291 and 08-0176, citing
La.C.C. Art. 450. See also, La.C.C. Art. 452; La.R.S. 9:1101.
[4]
La. Atty. Gen. Ops. 08-0176, 09-0028, 09-0066, and 09-0291.
[5] 03-1428 (La.App. 3 Cir. 3/3/04), 868 So.2d 266, 274;citing La.C.C. Arts. 450, 452, 658 and People For OpenWaters, Inc. v. Estate of Gray, 94-301 (La. App. 3 Cir. 10/5/94), 643 So.2d 415.
[6] Id.
[7]
La. Atty. Gen. Ops. 08-0176, 09-0028, 09-0066, and 09-0291.
[8] La.R.S. 9:1101 states as follows:
The waters of and in all bayous, rivers, streams, lagoons, lakes and bays, and the beds thereof, not under the direct ownership of any person on August 12, 1910, are declared to be the property of the state. There shall never be any charge assessed against any person for the use of the waters of the state for municipal, industrial, agricultural or domestic purposes.
While acknowledging the absolute supremacy of the United States of America over the navigation on the navigable waters within the borders of the state, it is hereby declared that the ownership of the water itself and the beds thereof in the said navigable waters is vested in the state and that the state has the right to enter into possession of these waters when not interfering with the control of navigation exercised thereon by the United States of America. This Section shall not affect the acquisition of property by alluvion or accretion.
All transfers and conveyances or purported transfers and conveyances made by the state of Louisiana to any levee district of the state of any navigable waters and the beds and bottoms thereof are hereby rescinded, revoked and canceled.
This Section is not intended to interfere with the acquisition in good faith of any waters or the beds thereof transferred by the state or its agencies prior to August 12, 1910.
[9] La.R.S. 9:1104 states that the Legislature "finds that waters used in agricultural or aquacultural pursuits are not consumed, rather they are merely used, and the movement of the water ultimately provides value to the resource in several ways as these uses provide for additional pathways for integration of the water into the hydrological cycle."
[10] Buckskin Hunting Club, supra, at 274. See also
La. Atty. Gen. Ops. 08-0176, 09-0028, 09-0066, and 09-0291.
[11] La.C.C. Art. 2315(A) states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
[12] La.C.C. Art. 2323(A) provides that "[i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined."
[13]
La. Atty. Gen. Op. Nos. 08-0176, 09-0028, 09-0066, and 09-0291.
[14] La.Const. Art. IX § 1.
[15] While Act. 955 was enacted to deal with this specific issue, the Legislature's declared intent for this Act, stated in Section 2 of the Act, was "the intent of the legislature with this enactment is to provide needed interim stewardship of running surface water." The legislature also asserted that "pending the legislative process [of fully developing legislation to address this issue], it is necessary to immediately provide for an appropriate level of management and availability of the state's surface water resources in the interim period, and to provide for an optimal level of protection and use of all the natural resources of the state." Section 2 of Act 955.
[16] Act 955 of the 2010 Regular Session enacted Chapter 9-B of Title 30 of the Louisiana Revised Statutes, specifically La.R.S. 30:961-963.
[17] Act 955 of the 2010 Regular Session, enacted as La.R.S. 30:961(B). Such a form was adopted by the SMEB at its regular meeting on August 11, 2010. The form, which is available online or from DNR's Office of Mineral Resources, has also been approved by the Attorney General.
[18] The protections embodied in Act 955 include both a protection of the State's rights in things that it owns (i.e., the requirement for compensation) as well as a charge on DNR to undertake an environmental review of the impacts of any Act 955-authorized water use before granting final approval of that use.
[19] While the express regulation of Louisiana's running water may be in its initial stages, many other states have adopted laws regarding water allocation and use. A white paper entitled "Statutes Governing Water Allocation and Water Resource Planning in South Atlantic States," written by David H. Moreau, Ph.D., and L. Upton Hatch, Ph.D., summarizes and explains the governance of water in the Southeastern United States. In considering the specific "recourse" available in these other states, penalties vary considerably. All of the states included in the article do, however, stipulate a maximum penalty per day or per violation. These maximum penalties range from $250.00 to $50,000.00 for first offenses. Many states have also enacted legislation making a violation of their water management laws a misdemeanor criminal offense. http://www.ncsu.edu/wrri/events/ progressenergyseminars/SurfaceWater.pdf
[20] It should be noted that this review is neither exclusive nor exhaustive, but rather is an illustrative review of some available legal remedies.
[21] La.C.C. Art. 2315(A).
[22] La.C.C.P. Art. 3601(A).
[23] La.C.C.P. Art. 3601(C).
[24] See La.R.S. 14:67.
[25] La.C.Cr.P. Art. 61.
[26] Id. at 55.
[27] The Civil Code grants riparian landowners the right to use running water for their estate. No riparian landowner can transfer and/or sell rights greater than what he/she holds.